UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

UNITED   NATIONAL   SPECIALTY   INSURANCE     DocketNo:07-CV-10934
COMPANY,                                        (PKC)(THK)

                           Plaintiff,     **AFFIDAVIT IN SUPPORT**
                                           **OF SUMMARY JUDGMENT**

        -against-

1854   MONROE   AVENUE   H.D.F.C.   and   EULALIA
BALAGUER,

                        Defendants.
-----------------------------------------------------------------------x

**COMMONWEALTH OF PENNSYLVANIA**     )
                                     )     **ss.:**
**COUNTY OF MONTGOMERY**     )

**Mark Smith**, being duly sworn, deposes and says:

    1.     I am a Senior Claims Examiner for defendant United National Specialty Insurance

Company (referred to herein as "United National"), and in that capacity, I handle the instant

coverage action which arose from a personal injury action, pending in the New York State

Supreme Court, Bronx County captioned Eulalia Balaguer v. 1854 Monroe Avenue Housing and

Development Fund Corporation, under index number 15713/07.  As such, I am fully familiar

with the facts and circumstances set forth in this matter.

    2.     As the Claims Examiner handling this claim, I maintain the files and documents

of United National as to this matter, which files and documents are created by United National as

part of its business and maintained for business purposes.

    3.     In preparation of this affidavit, I have reviewed the documents maintained by

United National, relevant portions of which are attached hereto and discussed herein.

4.      I submit this affidavit in support of United National's motion for summary judgment seeking an order from the Court granting United National summary judgment declaring: 1) that this Court's previous finding against 1854 Monroe Avenue H.D.F.C. in this action is binding as against Eulalia Balaguer and warrants summary judgment against Eulalia Balaguer as a matter of law; and 2) that United National is entitled to a declaration that it has no obligation to Eulalia Balaguer under the policy of insurance that United National issued to 1854 Monroe Avenue H.D.F.C. with regards to the claims asserted or any judgment obtained in an underlying personal injury action commenced by Eulalia Balaguer against 1854 Monroe Avenue H.D.F.C. in the Supreme Court for the State of New York, Bronx County, captioned <u>Eulalia Balaguer v. 1854 Monroe Avenue Housing and Development Corporation</u>, under index number 15713/07; and 3)  for such other and further relief as this court deems just, equitable and proper.

## **THE POLICY ISSUED TO MONROE**

5.      United National issued a policy of insurance, numbered L7280545, to Monroe for the period from May 4, 2006 through May 4, 2007 (hereinafter "the Policy").  A copy of the Policy is annexed hereto as Exhibit "A."

6.      Eulalia Balaguer is not named as an insured on the policy, <u>See</u> Exhibit "A".

7.      The Policy includes a notice requirement as follows:

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

2.  Duties in the Event of Occurrence, Offense, Claim or Suit

a.      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, which may result in a claim.  To the extent possible, notice should  include:

(1)  How, when and where the "occurrence" or offense took place;

(2)  The names and addresses of any injured persons and witnesses; and

    (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

  b. If a claim is made or "suit" is brought against any insured, you must:

    (1) Immediately record the specifics of the claim or "suit" and the date received; and

    (2) Notify us as soon as practicable

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  c. You and any other involved insured must:

    (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit":

    (2) Authorize us to obtain records and other information

    (3.) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    (4.) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

See Exhibit A.

8.    This late notice of occurrence and claim provision applies in this case as the insured and claimant were aware of the accident which occurred on December 20, 2006 yet failed to report it until July 20, 2008.

**THE DISCLAIMER OF COVERAGE BY UNITED**

9.    Balaguer, the plaintiff in the underlying action and claimant in this coverage action, alleges that she was injured when she fell on the insured's premises on December 20, 2006. See Exhibit "B" for a copy of the Summons and Complaint in the Underlying Action.

10.    On July 20, 2007, United National received its first notice of the occurrence and claim giving rise to the underlying action. This was a delay of seven months from the date of

3

Balaguer's alleged fall. The notice came in the form of a fax from Monroe's Broker, Murphey and Jordan LLC, with the Summons and Complaint in the underlying action and was sent to United National's agent, Morstan General Agency. See Exhibit "B" for a copy of the fax cover sheets along with Acord Loss Form and Summons and Complaint.

11.    Despite diligent efforts, United National was unable to obtain Monroe's cooperation with United National's investigation into the occurrence and claim, making it difficult for United National to render a coverage decision. On August 2, 2007, United National sent Monroe a letter informing them that if they did not cooperate, United National would be forced to disclaim coverage as their noncooperation violated the terms of the policy. See Exhibit "C" for a copy of United National's demand for cooperation.

12.    On August 21, 2007, 32 days after receiving its first notice of the occurrence, claim and suit, United National disclaimed coverage to Monroe and Balaguer based on their failure to provide timely notice of the occurrence and claim. See Exhibit "D" for a copy of United National's disclaimer.

13.    Based on the foregoing, United National has no obligation to Balaguer under the policy that it issued to Monroe.

**WHEREFORE**, United National requests an order from the Court granting United National summary judgment declaring:

1)  that this Court's previous finding against 1854 Monroe Avenue H.D.F.C. in this action is binding as against Eulalia Balaguer and warrants summary judgment against Eulalia Balaguer as a matter of law; and

2)  that United National is entitled to a declaration that it has no obligation to Eulalia Balaguer under the policy of insurance that United National issued to 1854 Monroe Avenue

4

H.D.F.C. with regards to the claims asserted or any judgment obtained in an underlying personal injury action commenced by Eulalia Balaguer against 1854 Monroe Avenue H.D.F.C. in the Supreme Court for the State of New York, Bronx County, captioned Eulalia Balaguer v. 1854 Monroe Avenue Housing and Development Corporation, under index number 15713/07; and

    3)  for such other and further relief as this court deems just, equitable and proper.

_____
**MARK SMITH**

SWORN to before me this
day of May, 2008.

_____
**NOTARY PUBLIC**

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JOY COLEMAN, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires September 19, 2011

**EXHIBIT A**

 **UnitedAmerica** Insurance Group

**Penn-America Group, Inc.**®
Penn-America Insurance Company®
Penn-Star Insurance Company®
Penn-Patriot Insurance Company

**United National Group**®
United National Insurance Company®
Diamond State Insurance Company®
United National Specialty Insurance Company®
United National Casualty Insurance Company®

### *CERTIFICATION*

This is a true and certified copy of policy number L7180545 - 1854 MONROE ST. H.C.F.C.

Name: *Priscilla K. Priestman*

         Priscilla K. Priestman

Title:   Assistant Vice President of Underwriting; Northeast Regional Manager

Date:  05/05/08

Sworn to and subscribed
before me this 5th day
of May, 2008.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Shelley F. Weisberg, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires April 18, 2011
Member, Pennsylvania Association of Notaries

*Shelley F. Weisberg*

Notary Public

# POLICY BANNER PAGE

**POLICY NUMBER:**  L7180545

**INSURED:**  1854 MONROE ST. H.C.F.C.

## POLICY FORMS ARE COMPLETE



1854 MONROE ST. H.C.F.C.                                          L7180545

## SCHEDULE OF POLICY FORMS AND ENDORSEMENTS

Form(s) and Endorsement(s) made a part of this policy at time of issue.

| Form Number | Edition Date | Description |
|---|---|---|
| COMMON | | |
| DPA100 | 0898 | COMMON POLICY DECLARATIONS |
| EAA100 | 0798 | IN WITNESS CLAUSE |
| IL0003 | 1185 | CALCULATION OF PREMIUM |
| IL0017 | 1198 | COMMON POLICY CONDITIONS |
| IL0021 | 1185 | NUCLE ENERGY LIAB EXCL (BROAD) |
| IL0185 | 0498 | NY CHANGES - CALC OF PREM |
| IL0268 | 0498 | NY CHANGES - CANC & NON RENL |
| IL0985 | 0103 | DISCLOSURE TERROR RISK INSURANCE |
| COMMERCIAL GENERAL LIABILITY | | |
| CL150 | 0995 | CGL COVERAGE PART DECLARATIONS |
| CG0001 | 0196 | CGL COVERAGE FORM |
| CG0163 | 0798 | NY CHANGES - CGL COVERAGE FORM |
| CG2144 | 1185 | LIMIT OF COV DES PREM PROJECT |
| CG2147 | 1093 | EMPLYMNT RELATED PRACTICE EXCL |
| CG2149 | 0196 | TOTAL POLLUTION EXCL ENDT |
| CG2621 | 1091 | NY CHANGES/TRANSFER OF DUTIES |
| CG2624 | 0892 | NY CHANGES - LEGAL ACTION / US |
| SL4 | 0298 | EXCL - ASSAULT & BATTERY |
| SL11 | 0598 | EXCL - ASBESTOS |
| SL31 | 0298 | EXCL - LEAD LIABILITY |
| SL65 | 0698 | EXCL PUNITIVE & EXEMPLARY DAMG |
| ** | | END OF GL FORMS |

**united national group**

# UNITED NATIONAL SPECIALTY INSURANCE COMPANY
*MILWAUKEE, WISCONSIN*

## RENEWAL CERTIFICATE
*VALUABLE - ATTACH TO YOUR POLICY*

**Policy Number:** L7180545

**Named Insured:** 1854 MONROE AVENUE, H.D.F.C.

**Mailing Address:** C/O MONICA ACEVEDO
Street: 1854 MONROE AVE.

City: BRONX
State & Zip Code: NY 10457

**Renewal Period:** From: May 4, 2006    To: May 4, 2007
at 12:01 A.M. Standard Time at the mailing address shown above.

**Producer Name:** Morstan General Agency
Address: P.O. BOX 4500
PO Box 4500

MANHASSET    NY 11030-4500
**Producer Number:** 01076

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM SHOWN BELOW, THE COVERAGE INDICATED IS RENEWED AND SUBJECT TO ALL THE TERMS AND CONDITIONS OF THE PREVIOUS POLICY INCLUDING FORMS AND ENDORSEMENTS, UNLESS OTHERWISE SPECIFIED. CHANGES IF ANY: IL 0985

THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

| | **PREMIUM** |
|---|---|
| Commercial General Liability Coverage Part | $5,939.00 |
| | |
| **TOTAL** | $5,939.00 |

By: _____
Countersignature

03/10/06
EPA-100 (8-98)

POLICY NUMBER: L7180545

IL 09 85 01 03

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

| SCHEDULE* |
|---|
| Terrorism Premium (Certified Acts) $ EXCLUDED |
| Additional Information, if any, concerning the terrorism premium: |
| * Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure of Federal Participation In Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

Policy Change
Number 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

IL 12 01 11 85

# POLICY CHANGES

| POLICY NO. | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| L7180545 | 05/05/2006 | UNITED NATIONAL SPECIALTY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| 1854 MONROE AVENUE, H.D.F.C. | |

**COVERAGE PARTS AFFECTED**

Commercial General Liability

### CHANGES

IT IS HEREBY UNDERSTOOD AND AGREED THAT FORM EPA-100 IS AMENDED TO
SHOW THE POLICY PERIOD AS 05/05/06  TO  05/05/07 IN LIEU OF
05/04/06  TO  05/04/07

NO CHANGE IN PREMIUM
05/08/06 KB
BRK:MURPHY & JORDAN,INC

_____

Authorized Representative Signature

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983



# UNITED NATIONAL SPECIALTY INSURANCE COMPANY
### MILWAUKEE, WISCONSIN

# RENEWAL CERTIFICATE
## *VALUABLE - ATTACH TO YOUR POLICY*

**Policy Number:** L7180545

**Named Insured:** 1854 MONROE AVENUE, H.D.F.C.

**Mailing Address:** C/O MONICA ACEVEDO
Street: 1854 MONROE AVE.

City: BRONX
State & Zip Code: NY 10457

**Renewal Period:** From: May 5, 2006     To: May 5, 2007
at 12:01 A.M. Standard Time at the mailing address shown above.

**Producer Name:** Morstan General Agency
Address: P.O. BOX 4500
PO Box 4500

MANHASSET          NY 11030-4500
**Producer Number:** 01076

---

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM SHOWN BELOW, THE COVERAGE INDICATED IS RENEWED AND SUBJECT TO ALL THE TERMS AND CONDITIONS OF THE PREVIOUS POLICY INCLUDING FORMS AND ENDORSEMENTS, UNLESS OTHERWISE SPECIFIED. CHANGES IF ANY: IL 0985

---

THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.                    **PREMIUM**

Commercial General Liability Coverage Part                    $5,939.00

**TOTAL**          $5,939.00

By: _____
**Countersignature**

05/23/06
EPA-100 (8-98)                    COMPANY

06/21/2005 09:31 AM C5AC4_17560



# UNITED NATIONAL SPECIALTY INSURANCE COMPANY
### MILWAUKEE, WISCONSIN

# RENEWAL CERTIFICATE
## *VALUABLE - ATTACH TO YOUR POLICY*

**Policy Number:** *L7180545*

**Named Insured:** *1854 MONROE AVENUE, H.D.F.C.*

**Mailing Address:** *C/O MONICA ACEVEDO*
**Street:** *1854 MONROE AVE.*

**City:** *BRONX*
**State & Zip Code:** *NY 10457*

**Renewal Period:** From: *May 5, 2005*    To: *May 5, 2006*
at 12:01 A.M. Standard Time at the mailing address shown above.

**Producer Name:** *Morstan General Agency*
**Address:** *1981 Marcus Avenue*
*Suite 105*

*Lake Success        NY 11042*
**Producer Number:** *01076*

---

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM SHOWN BELOW, THE COVERAGE INDICATED IS RENEWED AND SUBJECT TO ALL THE TERMS AND CONDITIONS OF THE PREVIOUS POLICY INCLUDING FORMS AND ENDORSEMENTS, UNLESS OTHERWISE SPECIFIED. CHANGES IF ANY: IL 0985

THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

**PREMIUM**

Commercial General Liability Coverage Part                    $5,939.00

**TOTAL**        $5,939.00

By: _____
Countersignature

ENTERED
MAY 1 0 2005

RECEIVED
MAY 0 5 2005
by Data Entry

COPY

03/09/05 By DATA ENTRY
EPA-100 Checked by

06/21/2005 09:31 AM C5AC4_17560

POLICY NUMBER: L7180545

IL 09 85 01 03

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

**SCHEDULE\***

Terrorism Premium (Certified Acts) $  EXCLUDED

Additional Information, if any, concerning the terrorism premium:

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure of Federal Participation In Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

IL 09 85 01 03                ISO Properties, Inc., 2003                Page 1 of 1 □



# UNITED NATIONAL SPECIALTY INSURANCE COMPANY

*A Stock Company*
MILWAUKEE, WISCONSIN

## COMMERCIAL INSURANCE POLICY
## COMMON POLICY DECLARATIONS

**Policy Number:**   L7180545                                    **Renewal of:**

**Named Insured:**   1854 MONROE ST. H.C.F.C.

**Mailing Address:**   C/O MONICA ACEVEDO
     Street:   1854 MONROE AVE.

     City:   BRONX
State & Zip Code:   NY  10457

**Producer Name:**   Morstan General Agency
     Address:   1981 Marcus Avenue
          Suite 105

          Lake Success          NY 11042
**Producer Number:**   01076

**Policy Period:**   From: May 5, 2004      To:  May 5, 2005
          at 12:01 A.M. Standard Time at the mailing address shown above.

RECEIVED
NOV 0 2 2004
By DATA ENTRY

**Business Description:**   BUILDING OWNER

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE, AS STATED IN THIS POLICY.**

| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | PREMIUM |
|---|---|
| Commercial General Liability Coverage Part | $5,939.00 |
| **TOTAL** | $5,939.00 |

| Premium shown is payable: | $5,939 | at inception; | 1st Anniversary; | 2nd Anniversary |
|---|---|---|---|---|

Form(s) and Endorsement(s) made a part of this policy at time of issue:

SEE ATTACHED SCHEDULE OF POLICY FORMS AND ENDORSEMENTS SAA-100

By: _____
Electronic transmission          Countersigned

COMPANY

By Policy Management

# In Witness Clause

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____
Secretary

_____
President

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

IL 00 03 11 85

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESS AUTO COVERAGE
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D. Inspections And Surveys

1. We have the right to:

   **a.** Make inspections and surveys at any time;

   **b.** Give you reports on the conditions we find; and

   **c.** Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   **a.** Are safe or healthful; or

   **b.** Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

### E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

### F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

IL 00 21 11 85

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
# (BROAD FORM)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY
    NEW YORK DEPARTMENT OF TRANSPORTATION

1.  The insurance does not apply:

A.  Under any Liability Coverage, to "bodily injury" or "property damage":

(1)  With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2)  Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.  Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C.  Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

(1)  The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2)  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

(3)  The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2.  As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties;

"Nuclear material" means "source material," "Special nuclear material" or "by-product material"; "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor"; "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material"

Copyright, Insurances Services Office, Inc., 1984

content and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility." "Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel" or (3) handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25

grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1984

GU 276a (11-85)
IL 00 21 11 85