UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED NATIONAL SPECIALTY INSURANCE          Docket No: 07-CV-109334
COMPANY,                                                                  (PKC)

                        Plaintiff,          AFFIRMATION IN OPPOSITION
                                                                           TO SUMMARNY JUDGMENT
   -against-                                           MOTION AND IN SUPPORT OF
                                                                           MOTION TO VACATE DEFAULT
1854 MONROE AVENUE H.D.F.C. and         AND FOR SUMMARY JUDGMENT
EULALIA BALAGUER,                                  ON BEHALF OF DEFENDANT

                        Defendants.
-------------------------------------------------------------------X

     MICHAEL C. BEATTY, ESQ., being duly licensed to practice law before the Courts of the State of New York, affirms and says under penalty of perjury:

     I am associated with the law firm of FELDMAN, KRONFELD & BEATTY, attorneys for defendant, EULALIA BALAGUER, in this action and, as such, am fully familiar with the facts and circumstances herein.  I make this Affirmation in opposition to plaintiff's motion for summary judgment, in support of defendant, EULALIA BALAGUER's motion to vacate the default judgment as to the co-defendant, 1854 MONROE AVEUE H.D.F.C. pursuant to FRCP §60(b)(3) and §55(c) and in support of defendant, EULALIA BALAGUER's motion pursuant to FRCP §56 for summary judgment against the plaintiff, UNITED NATIONAL SPECIALTY INSURANCE, together with such other and further relief as this Court deems just and proper.

## BACKGROUND

     This insurance coverage action arises from an incident that occurred on December 20, 2006, when the defendant, EULALIA BALAGUER, fell and suffered a fractured femur requiring surgery by open reduction and internal fixation.  She fell as a result of her foot sticking

to a glue-like, adherent substance that was being used as a base for laying tiles in the kitchen of her apartment.  The construction work was being performed by employees of the co-defendant, 1854 MONROE AVENUE H.D.F.C.  (Affidavit of plaintiff annexed as Exhibit "A").

PROCEDURAL BACKGROUND

UNITED NATIONAL commenced this action by the filing of a Summons and Complaint on November 30, 2007 (Exhibit "B").  The defendant, EULALIA BALAGUER, interposed an Answer on March 7, 2008 (Exhibit "C"), however no appearance and/or responsive pleading was served by the co-defendant, 1854 MONROE AVENUE H.D.F.C.  Rule 26A exchanges were served by both appearing parties in March 2008 and a conference was conducted before the Honorable Judge P. Kevin Castel on March 14, 2008.  The plaintiff sought permission to file a default motion against the non-appearing defendant and did so on or about March 21, 2008.  The motion was not opposed and was granted by Order of Judge Castel on April 8, 2008.  The plaintiff has now moved for a summary judgment motion which is opposed by defendant EULALIA BALAGUER, who also cross moves for vacatur of the existing default against 1854 MONROE AVENUE H.D.F.C. as well as for summary judgment and dismissal of the complaint.

Co-defendant has now appeared and has stated its intention to move to vacate the default.

THE UNDERLYING ISSUES WERE NOT LITIGATED BUT WERE DETERMINED ON DEFAULT ONLY AND THE DOCTRINE OF COLLATERAL ESTOPPEL DOES NOT APPLY

The doctrine of collateral estoppel is not to apply in cases in which the estoppel is sought regarding issues that were not determined on the merits.  The plaintiff has submitted a number of cases to argue on behalf of the collateral estoppel claim.  However, all the cases

2

cited are based on matters in which there had been an underlying trial or a summary judgment motion decided on the merits in which the party to be precluded from relitigating actually had a "full and fair opportunity to litigate". They are distinguishable from the instant case in which the merits of the plaintiff's position have never been tested. Hence in <u>D'Arata v. New York Central Mutual Fire Insurance Company</u>, 563 NYS2d 24 (1990) there had been an underlying criminal trial; in <u>Wenig v. Glen Falls Indemniy Company,</u> 294 NY2d 195 (1945) the claim was actually permitted to proceed against the carrier; in <u>Oest v. Excelsior Insurance National-Nederlanden North American Property and Casualty Group,</u> 656 NYS2d 89 (2d Dept. 1996) there had been a summary judgment motion on the merits decided on the merits; in <u>Royal Zenith Corp. v. New York Marine Managers</u>, 596 NYS2d 65 (1st Dept. 1993) there had been a motion for summary judgment on the merits; in <u>New York Mutual Fire Insurance Company v. Kilmurray,</u> 585 NYS2d 599 (3rd Dept. 1992) there had been summary judgment granted on a prior consent Order of the parties; in <u>Juan C. v. Cortines,</u> 657 NYS2d 58 (1997) there been a full suppression hearing with testimony and a judicial finding; in <u>Martin v. Geico Direct Insurance,</u> 818 NYS2d 265 (2d Dept. 2006) there had been a prior arbitration in which the parties had litigated the same issues; in <u>Matter of Samuel A. Abady,</u> 800 NYS2d 651 (1st Dept. 2005) an attorney had been previously determined by the Court to have violated ethical standards and was collaterally estopped at the disciplinary hearing from re-litigating same; and <u>Shoretz v. Nationwide Insurance Company,</u> 2002 WL 1492135 (SDNY 2002) does not stand for the principle stated but rather deals with questions of post trial discovery and the carrier's potential rights to disclaim.

In each and every case, the prong of the collateral estoppel doctrine requiring that the "party to be precluded must have had a full and fair opportunity to litigate" was met. That has

not been the case herein.  The co-defendant, 1854 MONROE AVENUE has not had that opportunity.

In the additional case cited by plaintiff's counsel, in which it is maintained that collateral estoppel applies even in cases of default, the cited matter is again distinguishable.  In <u>Curiale v. Andra Insurance Company,</u> 608 NYS2d 464 (1st Dept. 1994) the party had already interposed an Answer and was fully aware of the litigation and then defaulted on an Order of the court to post a bond.  In <u>Curiale</u> the party knowingly had the opportunity to litigate and chose to not do so.  That is distinctly different from the case at bar.

As such, the doctrine of collateral estoppel must not be applied in the instant case and the plaintiff's motion must be denied.  It is of note that the plaintiff has taken no steps to argue in the alternative and advance the merits of its position but has rather, relied solely on the collateral estoppel issue as the basis for its application.  As argued below (page 10 *et seq.*), it is unlikely that the plaintiff would obtain summary judgment on the merits.

<u>VACATING THE THE UNDERLYING DEFAULT</u>

The carrier alleges in its Complaint that a disclaimer was sent to the insured on August 2, 2007.  Specifically in paragraph "20.", the plaintiff alleged that "*UNITED NATIONAL disclaimed coverage via a letter dated August 2, 2007.*"  This is now acknowledged to be untrue.  As admitted by Mark Smith, Senior Claims Examiner for the plaintiff, in his Affidavit in Support, Mr. Smith states in paragraph 12: "*On August 21, 2007, 32 days after receiving its first notice of the occurrence, claim and suit, United National disclaimed coverage to Monroe…*"  In truth, the plaintiff first issued the disclaimer 32 days after notice of the claim was received.  There was no disclaimer prior to August 21, 2007, despite plaintiff's allegation to the contrary.

4

While a letter to the insured appears to have been generated on August 2, 2007, it was not a disclaimer letter. The misrepresentation embodied in this allegation undercuts the validity of the plaintiff's claim. The difference between a 14 day time period and a 32 day time period, in this area of the law, is like the difference between night and day. As discussed below (page 9, *et seq*), the carrier is obligated to issue a timely disclaimer and under existing New York case law the discrepancy between a 14 day disclaimer and a 32 day disclaimer changes the whole complexion of the claim.

    a) <u>*Fraudulent allegations and or misrepresentation as a basis to vacate the default*</u>

Federal Rule of Civil Procedure, section 60(b)(3) states as follows:

> Relief from a Judgment or Order
>
> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> …
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

The default judgment against the co-defendant, 1854 MONROE AVENUE HDFC was obtained based on either a knowingly false allegation, or a mistaken misrepresentation of a material fact. The plaintiff is not entitled to a default based on a knowingly, or subsequently provable, false allegation and same has been previously held in <u>*Estate of Murdoch v. Pennsylvania,*</u> 432 F.2d 867 (3d Cir. Pa. 1970):

> Clause (3) of Rule 60(b), F.R.Civ.P. makes a misrepresentation by an adverse party a ground for relieving a party from a final judgment against him. **We think that such relief is especially appropriate where the judgment in question is a summary one, the entry of which has precluded a trial on the merits.** Here, if the documents presented by the City of Philadelphia are to be believed, and on this appeal we must take them to be true since they have not been controverted by Webster, that corporation has been guilty of a

5

misrepresentation on the basis of which the court dropped it from the action and granted it summary judgment on the City's crossclaim. This is exactly the sort of situation to which clause (3) of the rule is directed (emphasis added)  *Estate of Murdoch* at 870.

Rule 60 is a more stringent standard for vacating a default than that required by Rule 55(c). Nevertheless the public policy considerations remain the same in that the court traditionally prefers that a matter be determined on its merits. It was stated in *Byron v. Bleakley Trasnportation Co.*, 43 F.R. D. 413, 415-416 (S.D.N.Y. 1967):

> Using the Rules to the best advantage of one's client is good advocacy and the court casts no aspersions on plaintiff's counsel. But where the net result of adhering to the letter of the Rules is to thwart rather than to promote justice, the court must be wary of their rigid application. The defendant did not wilfully or negligently disobey service of process (see *Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242 (3d Cir. 1951); BARRON & HOLTZOFF, Federal Practice & Procedure, §1329 (Rules ed. 1958), and in an unusual case such as this the court should not be handicapped by the Rules, which are to be construed liberally to achieve justice. Cf. *Cavalliotis v. Salomon*, 357 F.2d 157 (2d Cir. 1966); *Tozer v. Charles A. Krause Milling Co.*, *supra*.

It was similarly stated in *Horn v. Intelectron Corp.*, 294 F. Supp. 1153, 1155 (S.D.N.Y. 1968):

> Rule 60(b) should be liberally construed to resolve doubts (if any), in favor of setting aside default judgments so that cases may be decided on their merits. *Huntington Cab Co. v. American Fidelity & Casualty Co.*, (D.C.S.D.W.Va.1945), 5 F.R.D. 496, 498. Matters which involve large sums of money should not be determined by default judgments if it can reasonably be avoided. *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242 (C.A. 3d Cir. 1951).

b)  *Good cause pursuant to FRCP 55(c) as a basis to vacate the default*

The court is also empowered to vacate a default pursuant to FRCP 55(c).

> (c) Setting Aside a Default or a Default Judgment. The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b).

Under Federal Rule of Civil Procedure, section 55(c) the court is to examine three

6

principal factors that bear on the "appropriateness of relieving a party of a default, <u>Meehan v. Snow,</u> 652 F.2d 274 (2d Cir. 1981). The three factors are 1)whether the default was willful, 2)whether setting it aside would prejudice the adversary, and 3)whether a meritorious defense is presented.

Was the default willful in the instant case? It seems not. By the recent appearance of counsel, it is apparent that 1854 Monroe Avenue has not been fully aware of the Federal Court proceeding. It is unclear who is receiving mail on co-defendant's behalf, what mail has been received by them, and if mail was received if it was understood or in a language that was understandable to the recipient. In any event, the expense of hiring an attorney is a display of good faith that should be given a voice. It is difficult to imagine that any defendant would willfully expose their assets to a liability judgment unless there was a misunderstanding as to the carrier's position. Co-defendant has now appeared, and it is believed that the principal at 1854 Monroe Avenue did not originally understand the implications of this action.

Is the vacatur prejudicial to the plaintiff? "Prejudice arises where the setting aside of the entry of default results in the loss of relevant evidence or some other occurrence that tends to impair the plaintiff's ability to pursue the claim." <u>Momah v. Albert Einstein Medical Center</u>, 161 F.R.D 304, 307 (E.D Pa. 1995). Clearly, there is no prejudice existing here by this definition. No relevant evidence will be lost and the plaintiff will be able to fully pursue its claim on the merits.

Does the defendant have a meritorious defense? As is demonstrated below, there is a significant defense in this case, sufficient, in fact to mount a motion for summary judgment seeking dismissal of the claim under existing New York law.

It is respectfully requested that the branch of the plaintiff's motion premised on their

argument of collateral estoppel be suspended so that the substantive merit of the underlying issues become the basis for the disposition of the parties interests as opposed to a procedural resolution that will not provide the appropriate and equitable relief that justice requires. This is especially true in light of the recent appearance of counsel on behalf of 1854 MONROE AVENUE and the expressed intention to move to vacate. If the plaintiff can carry the day on the strength of a meritorious argument, then so be it. However, based on the facts of this case and the law and case precedent we present herein, that the plaintiff/carrier does not possess the requisite meritorious argument to be awarded the relief of summary judgment.

As a matter of public policy, if the carrier did not issue a timely, and therefore valid, disclaimer, it should not be permitted to use the courts as a shield. It should be made to "come out and fight" and allow the merits to determine the outcome. This is a case of Goliath versus David, not two sophisticated litigants dealing at arm's length. As such, the insured should have an opportunity to be heard. The requisite "good cause" is the strength and merit of the defendants' position, as well as the public policy ramifications of the carrier escaping its exposure. The ripple effect of the plaintiff prevailing will constrain EULALIA BALAUER to proceed against an unprotected defendant. Should she then prevail it will likely destroy the Housing Development Fund1. It will put the carrier back on the spot for failing to interpose a timely defense in the underlying action. It will involve the carrier's designated attorneys as possible parties in any action deriving from that failure. It will probably deny the injured party, EULALIA BALAGUER, a fair recovery. It will most likely give rise to additional litigation involving the building, the managing company, the mortgage holder and the board of directors in

---

1 HDFCs are New York State corporations governed by New York State Private Housing Finance Law and are simultaneously incorporated under New York's Business Corporation Law (BCL) so they can issue stock as a co-op corporation. Instituted in New York in 1995 they are designed to help tenants take charge of their own buildings and turn them into thriving, successful cooperatives. As of 2003, there were over 1,000 HDFCs in New York City.

the event there is a judgment. Admittedly, all of those things might yet occur. But they should only occur if the carrier has a meritorious claim, and not on what plaintiff has characterized as "legal arguments" in its May 28, 2008 letter to the Court.

It must be stated, that this office did not receive any notice, either by written or electronic means, of the return date or outcome of the default motion due to a failure to register with ECF. This is wholly due to counsel's lack of familiarity with the electronic filing system. I do not regularly practice in the Federal system and have been the attorney of record in Federal matters approximately six or seven cases in twenty five years of practice. Your affirmant registered with ECF in or about 2005 in the Eastern District. That is the only time in which I used the system. I was under the mistaken assumption that my registration would apply across District lines and that my appearance at the pre-trial conference on March 14, 2008 would automatically register with ECF. As a result, I failed to register with the Southern District and waited for an e-mail notice that never came.

Plaintiff's counsel knew of that I was not registered, and yet, possessed with that knowledge -- even as the default motion was being submitted and ruled upon -- he did not advise this office of the return date. It was not until April 25, 2008, following a phone inquiry by your affirmant to plaintiff's counsel regarding a possible return date, that we learned that a default had already been entered as to the co-defendant, 1854 MONROE AVENUE, H.D.F.C.

Had this office been aware of the return date of the motion, the motion would have been met with a cross motion for summary judgment so that the matter would have been decided on its merits. It is not suggested here that it is the obligation of adverse counsel to answer for the oversights of this office. However, the unjust implications of said actions are apparent. It is the benefit of those procedural missteps that are now heavily relied upon by plaintiff to bootstrap an

argument that, if successful, would relieve the plaintiff of a potentially substantial liability.  It is argued here that the merits of the case should control the outcome of the case and your affirmant's lack of familiarity with Federal practice should not rule the day.   Hence, it is respectfully requested that the underlying default as to co-defendant, 1854 MONROE AVENUE HDFC be vacated and the respective motions be decided on the merits, as set forth below.

UNDERLYING ACTION

In the underlying action, a Summons and Verified Complaint was filed in the Supreme Court, Bronx County on May 30, 2007 (Exhibit "D").  Service was effectuated pursuant to Business Corporation Law §306 on July 2, 2007 (Exhibit "E" – affidavit of service and receipt). The Summons and Verified Complaint were received by the plaintiff herein on or about July 20, 2007 through Murphy & Jordan, LLC (Exhibit "F" letter of transmittal).  On or about July 24, 2007, UNITED NATIONAL SPECIALTY INSURANCE COMPANY was granted an extension of time to answer.  That agreement was confirmed by Mr. Stanley Doniger, the plaintiff's claims representative, in a facsimile received in our office on or about July 25, 2007 ("G"). ♦

On or about August 24, 2007, our office received an additional letter from UNITED NATIONAL SPECIALTY INSURANCE COMPANY (Exhibit "H") that was a carbon copy of a disclaimer letter to the co-defendant.  The reasons for the disclaimer as set forth in that letter – untimely notice -- form the basis for the case at bar.  However, there is no merit to the plaintiff's' disclaimer based on the present status of New York law and the matter must be dismissed.

---

♦ It should be noted that UNITED NATIONAL SPECIALTY assumed the duty of answering for the co-defendant, and then failed to interpose its Answer in a timely fashion.  An attempt to serve an Answer was made in November 2007 by counsel retained by UNITED NATIONAL.  The Answer was rejected and a default motion is pending.

## THE CO-DEFENDANT, EULALIA BALAGUER, HAS STANDING TO SEEK SUMMARY JUDGMENT

The injured party has an independent right, while not a party to the insurance contract, to invoke the protection of that contract. New York Insurance Law §3420 (formerly section 167) provides for the rights of an injured party to bring a claim against the insurer following the entry of a judgment. The statute provides:

> § 3420. Liability insurance; standard provisions; right of injured person
>
> (b) Subject to the limitations and conditions of paragraph two of subsection (a) hereof, an action may be maintained by the following persons against the insurer upon any policy or contract of liability insurance which is governed by such paragraph, to recover the amount of a judgment against the insured or his personal representative:
>
> (1) any person who, or the personal representative of any person who, has obtained a judgment against the insured or his personal representative, for damages for injury sustained or loss or damage occasioned during the life of the policy or contract;

In *Lauritano v. American Fidelity Fire Insurance Company*, 3 AD2d 564; 162 N.Y.S.2d 553 (1st Dept. 1957), the First Department stated:

> … the Legislature, recognizing that an injured party, while not privy to the insurance contract, had a genuine interest in it and should be enabled to invoke its protection, enacted section 109 of the Insurance Law, forerunner of the present section 167, to create, as its heading indicates, an independent right of the injured person to proceed directly against the liability insurer (L. 1917, ch. 524). Successive amendments have profoundly altered what was once commonly accepted -- that the liability policy existed solely for the protection of the insured. *Lauritano* at 556.

EULALIA BALAGUER, was named as a co-defendant in the instant case because the plaintiff is aware of the status of New York law and know that she could move to enforce her judgment against the carrier if she prevailed in the underlying action. Conversely, if the carrier were to be successful herein, it would be able to raise a defense of collateral estoppel in any subsequent action involving EULALIA BALAGUER's claims, as it now argues. Under the doctrine, the defendant, EULALIA BALAGUER, would be estopped from relitigating any issues

determined in this action. EULALIA BALAGUER has an interest in the insurance contract as a potential benefiary thereunder and, thus, can challenge the carrier's effort to withdraw or disclaim the coverage provided therein.

<u>THE CARRIER MUST DISCLAIM AS "SOON AS REASONABLY PRACTICABLE"</u>

New York Insurance Law §3420(d) requires that a carrier provide written notice of a disclaimer "as soon as is reasonably possible". The statue provides:

> § 3420. Liability insurance; standard provisions; right of injured person
>
> (d) If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, ***it shall give written notice as soon as is reasonably possible of such disclaimer*** of liability or denial of coverage to the insured and the injured person or any other claimant. (emphasis added)

The "reasonably possible" time period commences when the carrier "has sufficient knowledge of facts entitling it to disclaim", *First Financial Insurance Co. v. Jetco Contracting Corp*, 1 NY3rd 64, 66, 769 NYS2d 459 (2003). The facts in *First Financial* closely parallel the facts herein. In that case, the carrier sought declaratory judgment relief in the Southern District. Following an appeal by Jetco to the Second Circuit, that Court certified the matter to the New York Court of Appeals, which stated the following:

> One thing is clear: that it is the responsibility of the insurer to explain its delay. Where, in *Hartford*, [*Hartford Insurance Company v. County of Nassau*, 46 NY2d 1028, 416 NYS2d 539 (1979)] the insurer gave absolutely no explanation for its delay, this Court concluded that a delay of 62 days was, as a matter of law, unreasonable. Clearly a delay of 48 days in those circumstances would have been as well. Here, we see no material difference between a delay that is *unexplained* and a delay that is *unexcused*, meaning the explanation is unsatisfactory. The insurer's 48-day delay in giving written notice, on the facts before us, was unreasonable as a matter of law. *First Financial* at 464.

The Court of Appeals was careful to avoid an absolute standard in terms of the number of days in which a disclaimer must be forwarded, noting that the reasonableness of the time period

12

was essentially a fact based inquiry.  However, the principle was clearly established that the carrier must explain the period of delay, something it cannot reasonably do in this case, as discussed, *infra*.

### THE CARRIER DID NOT DISCLAIM AS SOON AS "REASONABLY PRACTICABLE" AND THE DISCLAIMER IS INVALID

   a) *Timeliness forms the basis of the instant disclaimer*

The plaintiff received notice of this accident on July 20, 2007.  The plaintiff disclaimed coverage on August 21, 2007, 32 days later.  The basis for the disclaimer, as stated by UNITED NATIONAL in its letter of August 21, 2007, (Exhibit "H") was as follows:

> "United National Specialty Insurance Company did not receive notice of this loss for over 7 months after the date of loss.  There is no coverage for this loss because of your violation of the conditions section of the policy." (Exhibit "H", page 4).

The disclaimer statement refers to Section IV(2) of the policy which requires the insured to notify the carrier of an occurrence "as soon as practicable".  (Exhibit "G", page 3).  It is clear therefore, that the plaintiff's disclaimer is premised on a timely failure to notify the carrier, and no other reason.

   b) *The plaintiff is limited to a claim of untimely notice, only, as a basis for disclaimer*

Under New York law, all bases for a disclaimer must be clearly enumerated in the disclaimer letter. As stated in *General Accident Insurance Group v. Cirucci*, 46 N.Y.2d 862; 414 N.Y.S.2d 512 (1979):

> Although, under the facts of this case a disclaimer might have been premised on the late notice furnished by the third parties themselves to the insurer, since this ground was not raised in the letter of disclaimer, it may not be asserted now.  *General Accident* at 514.

Additional reasons may not be raised in a subsequent declaratory judgment action.  In this case, the only basis annunciated by UNITED NATIONAL was one of timely notice.

13

*c) <u>The carrier did not disclaim for 32 days, a period that was unreasonable in length</u>*

The time period to be examined for its reasonableness runs from July 20, 2007 (day of notice) to at least August 21, 2007 (day of disclaimer). This office received the August 21, 2007 correspondence on August 24, 2007, or 35 days after notice was received. Thus, 32 days is the shortest time period the carrier can invoke,♠ and is, in fact, the period of time that expired before the disclaimer was issued, as acknowledged by the plaintiff in its motion papers. However, 32 days is <u>not</u> a reasonable time period.

Any time period that might be defined as reasonable in this matter can be no more than a few days. Within that time, data bases and records could have been searched to determine if an investigation or claim file had been established. Once there was no evidence of such a file, then a disclaimer on the basis of untimeliness should have been immediately generated. Since that was not done, the eventual disclaimer was untimely and, therefore, invalid.

It was, or should have been, apparent to the carrier as of July 20, 2007 that a late notice rationale was available. The accident occurred on December 20, 2006. That fact was unequivocally stated in the Verified Complaint. <u>The only dispositive fact required by the carrier to form a basis for a late notice disclaimer was the date of accident.</u> Thus, it was apparent on its face that there was a late notice claim available (at least by plaintiff's definition), immediately following any data base search.

The failure to act immediately gives rise to a number of questions concerning the carrier's actions during this period. Why did it have to write letter(s) to the insured? Why did it have to make phone calls to the insured? Why did it make telephone contact with your affirmant? Why did it inquire regarding the nature of the injuries? Why did it dispatch an

---

♠ No actual proof of mailing to the insured is part of the present record. For the sake of this argument is it assumed that there was such a mailing, a fact that still is not determinative in favor of the plaintiff.

investigator to the scene to take photographs and conduct interviews (Exhibit "I" – redacted investigator's report). Why did Mr. Doniger solicit copies of medical records and a demand from our office? All those actions by the plaintiff occurred <u>after</u> the carrier received notice of this claim and <u>before</u> the disclaimer. It was only after the plaintiff understood that this claim had significant damage potential – the hospital bill alone was almost $100,000.00 – that it started searching for a way out. The "disclaimer" was only taken as last resort, which makes understandable the fact that is was so untimely.

The Second Department has held that 34 days is an unreasonable time period in which to withhold a disclaimer after the carrier knew, or should have known, of the basis for denying coverage. As stated in <u>Sirius America Insurance Company v. Vigo Construction Corp., et al.</u>, 48 AD3rd 450, 852 NYS2d 176 (2nd Dept. 2008):

> In the instant case, **Sirius** relied upon a disclaimer dated November 3, 2004, and sent 34 days after it <u>knew or should have known</u> of the basis for denying coverage. Since there was no explanation for that delay, the 34-day delay in disclaiming coverage was unreasonable as a matter of law and thus ineffective (*see* <u>Matter of Allstate Ins. Co. v Swinton,</u> 27 AD3d 462, 811 N.Y.S.2d 108; <u>Pawley Interior Contr., Inc. v Harleysville Ins. Cos.,</u> 11 AD3d 595, 782 N.Y.S.2d 660; <u>Moore v Ewing,</u> 9 AD3d 484, 781 N.Y.S.2d 51; *cf.* <u>Farmbrew Realty Corp. v Tower Ins. Co. of N.Y.,</u> 289 AD2d 284, 734 N.Y.S.2d 592; <u>Brooklyn Hosp. Ctr v Centennial Ins. Co.,</u> 258 AD2d 491, 685 N.Y.S.2d 267). <u>Sirius</u> at 176 (emphasis added).

The standard to be applied is one of reasonable behavior, a standard that the carrier herein cannot meet. The carrier's motivation in this case seems transparent. In its effort to minimize losses, it weighed the expense of a (possibly winning) declaratory judgment action against the expense of a significant injury trial in the Bronx with a possible verdict potential in excess of $1,000,000.00. Clearly, on a cost benefit analysis, the former option was more desirable than the latter. This would <u>not</u> have been true had the injury been less significant and the liability less compelling. Once it was determined that there was a potential upside to disclaiming, it was at

that time that a decision was made to do so.  There can be no other explanation for the carrier's investigation and development of a claim file and the attendant delay.

      d) *Alleged disclaimer of August 2, 2007 is no longer a fact in controversy as the plaintiff acknowledges that it did not disclaim on that day.*

As discussed, *infra*, the carrier originally alleged that a disclaimer was sent to the insured on August 2, 2007.  The allegation has now been admitted as untrue (Mark Smith, Affidavit in Support, paragraph "12").  While a letter appears to have been was generated on August 2, 2007 to the insured, it clearly was not a disclaimer letter, as the plaintiff now acknowledges.  Just so that there can be no reiteration of the attempt to classify the correspondence of August 2, 2007 as a "disclaimer", as was alleged in the complaint, it must be clearly stated that the letter would be considered a nullity for such purpose.  It is well established that notice of a disclaimer must be sent to the claimant or their representative.  The letter of August 2, 2007 was not forwarded to this office.  As stated in *Colon v. N.Y. Mutual Fire Ins. Co.,* 801 N.Y.S.2d 231 (2nd Dept 2005):

> Thus, in order to disclaim coverage as to plaintiff, who independently claimed entitlement to recover the judgment entered against defendant's insureds, defendant was required to issue a notice of disclaimer of coverage directly to plaintiff. *Colon* at 231.

<u>IN THE ALTERNATIVE, TIMELY NOTICE WAS GIVEN TO THE CARRIER</u>

Although the plaintiff relies upon lack of timely notice as a basis for its disclaimer, the notice in this matter was received by the carrier within seven months of the occurrence.  The notice referred to was that given by the injured party, not the insured.  The injured party is recognized as one who may give notice to the carrier.  *Massachusetts Bay Insurance Company, Respondent, v. Flood*, 128 A.D.2d 683; 513 N.Y.S.2d 182 (2nd Dept. 1987).  The carrier's disclaimer letter acknowledges this right of the injured party in its reference to a failure by "claimant's attorney…to comply with the policy conditions set forth above by failing to notify us

of the 'occurrence' and or claim as soon as practicable." (Exhibit "H" page 4).

The standards that apply to the timeliness of notice from an injured differ from those that apply to the insured. The Fourth Department has found a period of one year as reasonable when the notice is given by the injured party, holding that "the notice required of an injured party is measured less rigidly than that required of the insured", *Walters v. Atkins*, 179 AD2d 1067; 579 NYS2d 525, 527 (4th Dept. 1992), *citing* *Children's Hospital of Buffalo v. Employers Reinsurance Corp*, 84 AD2d 933, 446 N.Y.S.2d 695 (4th Dept. 1981) and *Lauritano v. American Fidelity Fire Insurance Company*, 3 AD2d 564; 162 N.Y.S.2d 553 (1st Dept. 1957).

We were retained January 29, 2007. We followed our initial procedures in setting up the claim, among them sending a claim letter to the co-defendant in February 2007. That letter went unanswered and a second following letter was forwarded in March 2007. When there was no response to our claim letters, we then filed suit in the Supreme Court, Bronx County on May 30, 2007.

Although neither of our claim letters was returned, we have reason to believe they may not have been delivered because the process server was unable to serve the co-defendant "1854 MONROE AVENUE HOUSING DEVELOPMENT FUND CORPORATION" at the 1854 Monroe Avenue address (Exhibit "J"- report of United Process Service). As a result, the co-defendant may have been unaware of our representation or even that our client intended to file a claim. Lack of knowledge of a claim will serve as a valid excuse for failing to notify the carrier of a claim. In *GLG Contracting v. Aetna Casualty*, 215 AD2d 821; 626 NYS2d 307 (3rd Dept. 1995) the Court held denied summary judgment to a carrier even though nearly three years had passed before notice was given. The insured claimed "belief in nonliability" as a basis, and although the carrier asserted that such a claim was non-credible, that credibility was found to be

an issue of fact.  See also, Briggs v Nationwide Mutual Ins. Co., 176 AD2d 1113; 575 N.Y.S.2d 413 (3rd Dept. 1991) [21/2 year delay in notifying was excused]; D'Aloia v. Travelers Insurance Co., 85 N.Y.2d 825; 623 N.Y.S.2d 837 (1995) [2 year delay in notifying was excused]; 875 Forest Ave. Corp. v. Aetna Casualty and Surety Company, 37 A.D.2d 11; 322 N.Y.S.2d 53 (1st Dept. 1971) [14 month delay in notifying was excused].

As can be seen our client didn't even consult with our office for six weeks following the occurrence.  Once we were unable to serve at the location, service was effectuated pursuant to the Business Corporation Law on July 2, 2007.  The carrier received the pleading 18 days later.

While the time period between the December 20, 2006 and July 20, 2007 is seven months, there was no reasonable means by which we might have identified an insurance company.  We were unable to contact the co-defendant nor had there been any advice to us regarding a carrier.

It should be noted that upon being contacted by Mr. Doniger, we immediately gave full and complete claims information to him including biographical data of our client (address, social security number, date of birth), the nature of the claim and theory of liability and provided details concerning hospitalization, injuries, treatment, cost of medical care, etc.  The carrier was put on adequately timely notice by the injured party and the fact that the carrier did not have notice prior to July 20, 2007 did not prejudice their rights.  As can be seen by the investigation in the claim file (Exhibit "K"), the carrier was able to fully reconstruct the events that form the basis of the underlying claim.  Interviews were conducted, photographs were taken and information was learned that was not corrupted or destroyed by the passage of the six month period.  Hence, there was no real or ascertainable prejudice to the carrier.

Thus, the carrier had ample notice in a reasonable time period, as provided by the injured

party. We cooperated fully in providing the carrier with information and it is submitted that regardless of when the insured provided notice, regardless of when the carrier issued its disclaimer, the carrier received adequate and timely notice from the injured party and therefore their claim must fall.

WHEREFORE, it is respectfully requested that the default against the co-defendant, 1854 MONROE AVENUE HDFC be vacated, that plaintiff's motion for summary judgment be denied in its entirety and that the cross motion for summary judgment be granted in its entirety and the Complaint be dismissed, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
       June 13, 2008

/S/_____
MICHAEL C. BEATTY