UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

UNITED    NATIONAL    SPECIALTY    INSURANCE    DocketNo:07-CV-10934
COMPANY,                                                      (PKC)(THK)

                        Plaintiff,              **DECLARATION IN**
                                        **OPPOSITION TO MOTION**
           -against-             **TO VACATE DEFAULT**

1854   MONROE   AVENUE   H.D.F.C.   and   EULALIA
BALAGUER,

                        Defendants.

-----------------------------------------------------------------------x

      **STEVEN VERVENIOTIS,** an attorney duly admitted to practice law before the Courts

of the State of New York, and this Court declares the truth of the following, subject to the

penalty of perjury:

      1.   I am a member of the law firm of MIRANDA SOKOLOFF SAMBURSKY SLONE

VERVENIOTIS LLP, attorneys for plaintiff, United National Specialty Insurance Company

("United National") in the above-captioned Insurance Coverage action.   As such, I am fully

familiar with the facts and circumstances at issue in this case.

      2.   I submit this Declaration in opposition of defendant 1854 Monroe Avenue H.D.F.C.'s

("Monroe") motion to vacate  the default judgment entered against them by this Court.   While

Monroe argues that it was not served, it was served and has no excuse for the failure to appear

and no defense to this case.

      3.   On the issue of service, the Court is referred to the accompanying affidavit of David

Smith attached hereto as **Exhibit "A"** and the accompanying Memorandum of Law.

      4.  On the merits, the court is referred to the affidavit of Mark Smith previously

submitted to Your Honor, with the exhibits attached thereto.  Mark Smith's affidavit is attached

as **Exhibit "B."**

5. United National issued a policy of insurance to Monroe numbered L7180545 covering the period from May 4, 2006 through May 4, 2007. ("the policy") See **Exhibit "C"** for the policy.

6. On or about May 25, 2007, Eulalia Balaguer commenced an action against Monroe in the Supreme Court for the State of New York, Bronx County, captioned Eulalia Balaguer v. 1854 Monroe Avenue Housing and Development Corporation, under Index Number 15713/07, for injuries she allegedly sustained on December 20, 2006. ("underlying action") See **Exhibit "D"** for a copy of the complaint in the underlying action.

7. On July 20, 2007, United National received its first notice of the occurrence and claim giving rise to the underlying action. The first notice came in the form of a fax from Monroe's broker, Murphy and Jordan LLC, with the summons and complaint in the underlying action attached, and was sent to United National's agent, Morstan General Agency. See **Exhibit "E"** for a copy of First Notice.

8. United National immediately commenced an investigation; however, Monroe did not cooperate. On August 2, 2007, United National sent a letter to its insured warning that they must cooperate with the investigation of the underlying matter or United National would be forced to disclaim coverage based on their noncooperation. See **Exhibit "F"**.

9. United National received its first report dated August 3, 2007 from its investigator, Braaten Associates, which discussed relevant coverage issues. See **Exhibit "G."**

10. United National received its second report dated August 20, 2007 from Braaten Associates, which further discussed the relevant coverage issues. See **Exhibit "H"**.

11. On August 20, 2007, United National Claims Examiner Diane Cruz established that

the insured was made aware of the underling occurrence and potential claim within days of its occurrence, yet failed to report it for seven months. See **Exhibit "I"**.

12. Through letter dated August 21, 2007, United National disclaimed coverage to Monroe and Balaguer based on their failure to provide timely notice of the occurrence and claim. See **Exhibit "J"**.

13. On or about October 9, 2007, United National filed a declaratory judgment complaint in this Court seeking a declaration from the Court that it had no obligation to defend and indemnify its insured 1854 Monroe Avenue H.D.F.C or the claimant/plaintiff, Balaguer in an underlying personal injury action commenced by Balaguer against Monroe. See **Exhibit "K"** for a copy of United National's declaratory judgment complaint.

14. Monroe was served with process in the declaratory judgment action on December 25, 2007, when process server David Smith served the summons and complaint on Monica Acevedo, who accepted as the agent of Monroe. See Exhibit "A".

15. In the declaratory judgment complaint, United National claims that it had no obligation to defend or indemnify Monroe or Balaguer based on their failure to provide United National with timely notice of the occurrence or claim which gave rise to Balaguer's underlying personal injury action, in violation of a precondition to coverage under United National's policy with Monroe. See **Exhibit "K"** for a copy of United National's declaratory judgment complaint.

16. On or about March 20, 2008, United National moved, on notice to all parties for a default judgment against its insured, Monroe based on Monroe's failure to answer the declaratory judgment complaint or to otherwise appear in this coverage action. This motion went unopposed by either Monroe or Balaguer. See **Exhibit "L"** for a copy of United National's motion for default, the exhibits attached thereto and the affidavit of service of that motion.

17. On or about April 8, 2008, this Court entered a default judgment against Monroe and Ordered, Adjudged and Decreed that United National has no obligation to defend or indemnify its insured Monroe in the underlying personal injury action brought by Balaguer. See **Exhibit "M"** for a copy of the Court's default judgment against Monroe.

18. On May 14, 2008, United National made a motion for summary judgment in this Court seeking a declaration that that this Court's previous finding against Monroe is binding as against Balaguer and warrants summary judgment against Balaguer as a matter of law; and that United National is entitled to a declaration that it has no obligation to Balaguer under the policy of insurance that United National issued to Monroe with regards to the claims asserted or any judgment obtained in an underlying personal injury action commenced by Balaguer.  This motion has been fully briefed and the Court's decision is currently pending.

19. On June 9, 2008, Monroe wrote to this Court requesting a pre-motion conference so that it could move to vacate the default judgment entered against them.  This Court so ordered that the conference be waived and allowed Monroe to file its motion. See **Exhibit "N"**.

20. As discussed in the accompanying memorandum of law, Monroe has not met the burden of proof to vacate the default judgment.

**WHEREFORE**, United National requests that the Court deny 1854 Monroe Avenue H.D.F.C.'s motion to vacate the default judgment entered against them and such other and further relief as this court deems just, equitable and proper.

DATED:    Mineola, New York
          August 5, 2008

STEVEN VERVENIOTIS (SV-8800)

4

**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

UNITED    NATIONAL    SPECIALTY    INSURANCE
COMPANY,

DocketNo:07-CV-10934
(PKC)(THK)

Plaintiff,

**AFFIDAVIT IN
OPPOSITION TO MOTION
TO VACATE DEFAULT**

-against-

1854    MONROE    AVENUE    H.D.F.C.    and    EULALIA
BALAGUER,

Defendants.
-----------------------------------------------------------------------x

**STATE OF NEW YORK**                    )
                                         )    **ss.:**
**COUNTY OF NASSAU**                     )

**David Smith**, being duly sworn, deposes and says:

1.      I am a process server employed by Maverick Process Services, Inc. with an office located at 647 Franklin Ave., Graden City, New York 11530.

2.      I submit this affidavit is support of United National Specialty Insurance Company's opposition to 1854 Monroe Avenue H.D.F.C.'s motion to vacate a default judgment.

3.      I submit this affidavit as proof that on December 15, 2007, I served Monica Acevedo with a summons and complaint and that she accepted that service on behalf of 1854 Monroe Avenue H.D.F.C.

4.      On December 15, 2007, I went to a building located at 1854 Monroe Avenue in the Bronx in order to serve 1854 Monroe Avenue H.D.F.C. Care of Monica Acevedo and Eulalia Balaguer with a summons and complaint.

5.      When I arrived at the building, I noticed that the vestibule did not have a list of tenants with apartment numbers or buzzers to the tenants' apartments.

6.    I waited on the first floor and asked people who walked by where I could locate Monica Acevedo. I was told I could find her on the second floor.

7.    I eventually found Monica Acevedo in Apartment 2E of the building located at 1854 Monroe Avenue.

8.    The woman in Apartment 2E identified herself as Monica Acevedo and accepted the summons and complaint on behalf of 1854 Monroe Avenue H.D.F.C.

9.    Attached to this affidavit is a copy of the Work Sheet which I completed while serving Monica Acevedo. In the section, "Name of Person/Corporate Entity Served" Monica Acevedo printed her own name.

10.    Not only did Monica Acevedo accept service on behalf of 1854 Monroe Avenue H.D.F.C., she also told me that I could locate Eulalia Balaguer in apartment 1A. I also served Eulalia Balaguer on December 15, 2007 in Apartment 1A of 1854 Monroe Avenue.

11.    I completed the affidavit of service on file with the Court on December 17, 2007, evidencing the fact that I served 1854 Monroe Avenue H.D.F.C. on December 15, 2008, by delivering a copy of the summons and complaint to Monica Acevedo.

**DAVID SMITH**

SWORN to before me this
_4th_ day of August, 2008.

**NOTARY PUBLIC**

DONNA L. ODRISCOLL
NOTARY PUBLIC, State of New York
No. 01OD6126123
Qualified in Nassau County
Commission Expires April 25, 20__

2

# Maverick Process Service, Inc.

516 693-1100
Fax: 516 693-1200

## *WorkSheet*

### *Fill in Red Areas*

County:
SOUTHERN
Index #:
07 CV 10934
Index # Date
11/30/2007
ReturnDate:

---

Job #  8925   Process #  20034      Date Job Assigned:     12/4/2007      HON. JUDGE CASTEL

UNITED NATIONAL SPECIALTY INSURANCE
COMPANY,

vs.

1854 MONROE AVENUE H.D.F.C. AND
EULALIA BALAGUER,

Petitioner/Plaintiff                                    Defendant/Respondent

---

Server:  DAVID SMITH               Attorney:  SOKOLOFF
License #:  0912050

Server's Notes:

Color of Building          Color of Door

Document(s) to be Served:
*SUMMONS IN A CIVIL ACTION & COMPLAINT*

| Witness Fee: | $0.00 | Service Requested | ☐ Rush |
|---|---|---|---|
| Check #: | | | ☐ Time Sensitive |
| | | | ☑ Routine |

Special Instructions:

---

*Person/Entity to Serve:*   *1854 MONROE AVENUE H.G.F.C.*   Date Served: 7-15-0   Time Served: 1105A
*C/O MONICA ACEVEDO*
*Service Address:*   *1854 MONROE AVENUE BRONX, NY 10457*

*New Address:*   _____

**Postal Check Required**                    Name of Postmaster

**Name of Person/Corporate Entity Served:**   Monica Acevedo
Circle whether Person or Corporate Entity

**Title/Relationship:**   _____

Sex:  F   Skin:  Light Jew/19hrs   Hair:  Blk   Age:  35-40   Height:  50/5'7   Weight:  140-150

Other:   _____

☐ Non-Military Question   Name of person asked:

## *Nail and Mail Attempts:*        1. _____
(Date and Time of Attempt)                2.

**EXHIBIT B**

**FILED ECF**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

UNITED NATIONAL SPECIALTY INSURANCE
COMPANY,

                            Plaintiff,

-against-

1854 MONROE AVENUE H.D.F.C. and EULALIA
BALAGUER,

                            Defendants.

-----------------------------------------------------------------------x

DocketNo:07-CV-10934
(PKC)(THK)

**AFFIDAVIT IN SUPPORT**
**OF SUMMARY JUDGMENT**

COMMONWEALTH OF PENNSYLVANIA    )
                                 )   **ss.:**

COUNTY OF MONTGOMERY           )

**Mark Smith**, being duly sworn, deposes and says:

    1.    I am a Senior Claims Examiner for defendant United National Specialty Insurance Company (referred to herein as "United National"), and in that capacity, I handle the instant coverage action which arose from a personal injury action, pending in the New York State Supreme Court, Bronx County captioned <u>Eulalia Balaguer v. 1854 Monroe Avenue Housing and Development Fund Corporation</u>, under index number 15713/07. As such, I am fully familiar with the facts and circumstances set forth in this matter.

    2.    As the Claims Examiner handling this claim, I maintain the files and documents of United National as to this matter, which files and documents are created by United National as part of its business and maintained for business purposes.

    3.    In preparation of this affidavit, I have reviewed the documents maintained by United National, relevant portions of which are attached hereto and discussed herein.

4.    I submit this affidavit in support of United National's motion for summary judgment seeking an order from the Court granting United National summary judgment declaring: 1) that this Court's previous finding against 1854 Monroe Avenue H.D.F.C. in this action is binding as against Eulalia Balaguer and warrants summary judgment against Eulalia Balaguer as a matter of law; and 2) that United National is entitled to a declaration that it has no obligation to Eulalia Balaguer under the policy of insurance that United National issued to 1854 Monroe Avenue H.D.F.C. with regards to the claims asserted or any judgment obtained in an underlying personal injury action commenced by Eulalia Balaguer against 1854 Monroe Avenue H.D.F.C. in the Supreme Court for the State of New York, Bronx County, captioned <u>Eulalia Balaguer v. 1854 Monroe Avenue Housing and Development Corporation</u>, under index number 15713/07; and 3) for such other and further relief as this court deems just, equitable and proper.

**THE POLICY ISSUED TO MONROE**

5.    United National issued a policy of insurance, numbered L7280545, to Monroe for the period from May 4, 2006 through May 4, 2007 (hereinafter "the Policy"). A copy of the Policy is annexed hereto as Exhibit "A."

6.    Eulalia Balaguer is not named as an insured on the policy, <u>See</u> Exhibit "A".

7.    The Policy includes a notice requirement as follows:

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

2.  Duties in the Event of Occurrence, Offense, Claim or Suit

a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, which may result in a claim.  To the extent possible, notice should  include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

2

    (3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

  b.  If a claim is made or "suit" is brought against any insured, you must:

    (1)  Immediately record the specifics of the claim or "suit" and the date received; and

    (2)  Notify us as soon as practicable

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

  c.  You and any other involved insured must:

    (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit":

    (2)  Authorize us to obtain records and other information

    (3.)  Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    (4.)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

See Exhibit A.

    8.    This late notice of occurrence and claim provision applies in this case as the insured and claimant were aware of the accident which occurred on December 20, 2006 yet failed to report it until July 20, 2008.

**THE DISCLAIMER OF COVERAGE BY UNITED**

    9.    Balaguer, the plaintiff in the underlying action and claimant in this coverage action, alleges that she was injured when she fell on the insured's premises on December 20, 2006. See Exhibit "B" for a copy of the Summons and Complaint in the Underlying Action.

    10.    On July 20, 2007, United National received its first notice of the occurrence and claim giving rise to the underlying action. This was a delay of seven months from the date of

3

Balaguer's alleged fall. The notice came in the form of a fax from Monroe's Broker, Murphey and Jordan LLC, with the Summons and Complaint in the underlying action and was sent to United National's agent, Morstan General Agency. <u>See</u> Exhibit "B" for a copy of the fax cover sheets along with Acord Loss Form and Summons and Complaint.

11.    Despite diligent efforts, United National was unable to obtain Monroe's cooperation with United National's investigation into the occurrence and claim, making it difficult for United National to render a coverage decision. On August 2, 2007, United National sent Monroe a letter informing them that if they did not cooperate, United National would be forced to disclaim coverage as their noncooperation violated the terms of the policy. <u>See</u> Exhibit "C" for a copy of United National's demand for cooperation.

12.    On August 21, 2007, 32 days after receiving its first notice of the occurrence, claim and suit, United National disclaimed coverage to Monroe and Balaguer based on their failure to provide timely notice of the occurrence and claim. <u>See</u> Exhibit "D" for a copy of United National's disclaimer.

13.    Based on the foregoing, United National has no obligation to Balaguer under the policy that it issued to Monroe.

**WHEREFORE**, United National requests an order from the Court granting United National summary judgment declaring:

1)  that this Court's previous finding against 1854 Monroe Avenue H.D.F.C. in this action is binding as against Eulalia Balaguer and warrants summary judgment against Eulalia Balaguer as a matter of law; and

2)  that United National is entitled to a declaration that it has no obligation to Eulalia Balaguer under the policy of insurance that United National issued to 1854 Monroe Avenue

4

H.D.F.C. with regards to the claims asserted or any judgment obtained in an underlying personal injury action commenced by Eulalia Balaguer against 1854 Monroe Avenue H.D.F.C. in the Supreme Court for the State of New York, Bronx County, captioned Eulalia Balaguer v. 1854 Monroe Avenue Housing and Development Corporation, under index number 15713/07; and

    3)  for such other and further relief as this court deems just, equitable and proper.

_____<br>
<strong>MARK SMITH</strong>

SWORN to before me this
        day of May, 2008.

_____
NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JOY COLEMAN, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires September 19, 2011

**EXHIBIT C**



**UnitedAmerica** Insurance Group

Penn-America Group, Inc.®
Penn-America Insurance Company®
Penn-Star Insurance Company®
Penn-Patriot Insurance Company

United National Group®
United National Insurance Company®
Diamond State Insurance Company®
United National Specialty Insurance Company®
United National Casualty Insurance Company®

## *CERTIFICATION*

This is a true and certified copy of policy number L7180545 - 1854 MONROE ST. H.C.F.C.

Name: *Priscilla K. Priestman* (signature)

Priscilla K. Priestman

Title:  Assistant Vice President of Underwriting; Northeast Regional Manager

Date:  05/05/08

Sworn to and subscribed
before me this 5th day
of  May, 2008.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Shelley P. Wasserg, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires April 18, 2011
Member, Pennsylvania Association of Notaries

*Shelley P. Wasserg* (signature)
Notary Public

# POLICY BANNER PAGE

**POLICY NUMBER:**  L7180545

**INSURED:**  1854 MONROE ST. H.C.F.C.

## POLICY FORMS ARE COMPLETE

1854 MONROE ST. H.C.F.C.                                    L7180545

# SCHEDULE OF POLICY FORMS AND ENDORSEMENTS

Form(s) and Endorsement(s) made a part of this policy at time of issue.

| Form Number | Edition Date | Description |
|---|---|---|
| COMMON | | |
| DPA100 | 0898 | COMMON POLICY DECLARATIONS |
| EAA100 | 0798 | IN WITNESS CLAUSE |
| IL0003 | 1185 | CALCULATION OF PREMIUM |
| IL0017 | 1198 | COMMON POLICY CONDITIONS |
| IL0021 | 1185 | NUCLE ENERGY LIAB EXCL (BROAD) |
| IL0185 | 0498 | NY CHANGES - CALC OF PREM |
| IL0268 | 0498 | NY CHANGES - CANC & NON RENL |
| IL0985 | 0103 | DISCLOSURE TERROR RISK INSURANCE |
| COMMERCIAL GENERAL LIABILITY | | |
| CL150 | 0995 | CGL COVERAGE PART DECLARATIONS |
| CG0001 | 0196 | CGL COVERAGE FORM |
| CG0163 | 0798 | NY CHANGES - CGL COVERAGE FORM |
| CG2144 | 1185 | LIMIT OF COV DES PREM PROJECT |
| CG2147 | 1093 | EMPLYMNT RELATED PRACTICE EXCL |
| CG2149 | 0196 | TOTAL POLLUTION EXCL ENDT |
| CG2621 | 1091 | NY CHANGES/TRANSFER OF DUTIES |
| CG2624 | 0892 | NY CHANGES - LEGAL ACTION / US |
| SL4 | 0298 | EXCL - ASSAULT & BATTERY |
| SL11 | 0598 | EXCL - ASBESTOS |
| SL31 | 0298 | EXCL - LEAD LIABILITY |
| SL65 | 0698 | EXCL PUNITIVE & EXEMPLARY DAMG |
| ** | | END OF GL FORMS |

SAA-100 (8-98)

**united national group**

# UNITED NATIONAL SPECIALTY INSURANCE COMPANY
*MILWAUKEE. WISCONSIN*

## RENEWAL CERTIFICATE
## *VALUABLE - ATTACH TO YOUR POLICY*

Policy Number:  *L7180545*

Named Insured:  *1854 MONROE AVENUE, H.D.F.C.*

Mailing Address:  *C/O MONICA ACEVEDO*
Street:  *1854 MONROE AVE.*

City:  *BRONX*
State & Zip Code:  *NY 10457*

Renewal Period:  From:  *May 4, 2006*    To:  *May 4, 2007*
at 12:01 A.M. Standard Time at the mailing address shown above.

Producer Name:  *Morstan General Agency*
Address:  *P.O. BOX 4500*
*PO Box 4500*

*MANHASSET*        *NY 11030-4500*
Producer Number:  *01076*

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM SHOWN BELOW, THE COVERAGE INDICATED IS RENEWED AND SUBJECT TO ALL THE TERMS AND CONDITIONS OF THE PREVIOUS POLICY INCLUDING FORMS AND ENDORSEMENTS, UNLESS OTHERWISE SPECIFIED. CHANGES IF ANY: IL 0985

THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.                    **PREMIUM**

Commercial General Liability Coverage Part                    $5,939.00

TOTAL        $5,939.00

By: _____
Countersignature

03/10/06
EPA-100 (8-98)

POLICY NUMBER: L7180545                                                IL 09 85 01 03

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

---

**SCHEDULE***

Terrorism Premium (Certified Acts) $ __EXCLUDED__

Additional Information, if any, concerning the terrorism premium:

---

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

---

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure of Federal Participation In Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

IL 09 85 01 03                          ISO Properties, Inc., 2003                          Page 1 of 1 ☐

Policy Change
Number 02

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

IL 12 01 11 85

# POLICY CHANGES

| POLICY NO. | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| L7180545 | 05/05/2006 | UNITED NATIONAL SPECIALTY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| 1854 MONROE AVENUE, H.D.F.C. | |

**COVERAGE PARTS AFFECTED**

Commercial General Liability

**CHANGES**

IT IS HEREBY UNDERSTOOD AND AGREED THAT FORM EPA-100 IS AMENDED TO SHOW THE POLICY PERIOD AS 05/05/06  TO  05/05/07 IN LIEU OF 05/04/06  TO  05/04/07

NO CHANGE IN PREMIUM
05/08/06  KB
BRK:MURPHY & JORDAN, INC

_____
Authorized Representative Signature

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983



# UNITED NATIONAL SPECIALTY INSURANCE COMPANY
*MILWAUKEE, WISCONSIN*

# RENEWAL CERTIFICATE
## *VALUABLE - ATTACH TO YOUR POLICY*

**Policy Number:**  L7180545

**Named Insured:**  1854 MONROE AVENUE, H.D.F.C.

**Mailing Address:**  C/O MONICA ACEVEDO
Street:  1854 MONROE AVE.

City:  BRONX
State & Zip Code:  NY 10457

**Renewal Period:**  From: May 5, 2006     To: May 5, 2007
at 12:01 A.M. Standard Time at the mailing address shown above.

**Producer Name:**  Morstan General Agency
Address:  P.O. BOX 4500
PO Box 4500

MANHASSET     NY 11030-4500
**Producer Number:**  01076

---

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM SHOWN BELOW, THE COVERAGE INDICATED IS RENEWED AND SUBJECT TO ALL THE TERMS AND CONDITIONS OF THE PREVIOUS POLICY INCLUDING FORMS AND ENDORSEMENTS, UNLESS OTHERWISE SPECIFIED.  CHANGES IF ANY: IL 0985

---

THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

**PREMIUM**

Commercial General Liability Coverage Part     $5,939.00

**TOTAL**     $5,939.00

By: _____
**Countersignature**

05/23/06
EPA-100 (8-98)          COMPANY


united
national
group

# UNITED NATIONAL SPECIALTY INSURANCE COMPANY
*MILWAUKEE, WISCONSIN*

# RENEWAL CERTIFICATE
## *VALUABLE - ATTACH TO YOUR POLICY*

**Policy Number:** *L7180545*

**Named Insured:** *1854 MONROE AVENUE, H.D.F.C.*

**Mailing Address:** *C/O MONICA ACEVEDO*
**Street:** *1854 MONROE AVE.*

**City:** *BRONX*
**State & Zip Code:** *NY 10457*

**Renewal Period:** From: *May 5, 2005*        To: *May 5, 2006*
at 12:01 A.M. Standard Time at the mailing address shown above.

**Producer Name:** *Morstan General Agency*
**Address:** *1981 Marcus Avenue*
*Suite 105*

*Lake Success          NY 11042*
**Producer Number:** *01076*

---

IN CONSIDERATION OF THE PAYMENT OF THE PREMIUM SHOWN BELOW, THE COVERAGE INDICATED IS
RENEWED AND SUBJECT TO ALL THE TERMS AND CONDITIONS OF THE PREVIOUS POLICY INCLUDING FORMS
AND ENDORSEMENTS, UNLESS OTHERWISE SPECIFIED. CHANGES IF ANY: IL 0985

---

THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.                              **PREMIUM**

Commercial General Liability Coverage Part                              $5,939.00

---

**ENTERED**
MAY 1 0 2005
03/09/05 By DATA ENTRY
EPA-100 Checked by

**RECEIVED**
MAY 0 5 2005
by Data Entry

**TOTAL**                 $5,939.00

By: _____
Countersignature

COPY

POLICY NUMBER: L7180545

IL 09 85 01 03

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

**SCHEDULE\***

Terrorism Premium (Certified Acts) $ __EXCLUDED__

Additional Information, if any, concerning the terrorism premium:

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

IL 09 85 01 03

ISO Properties, Inc., 2003

Page 1 of 1 □


united
national
group

# UNITED NATIONAL SPECIALTY INSURANCE COMPANY
*A Stock Company*
MILWAUKEE, WISCONSIN

## COMMERCIAL INSURANCE POLICY
## COMMON POLICY DECLARATIONS

**Policy Number:**    L7180545                    **Renewal of:**

**Named Insured:**    1854 MONROE ST. H.C.F.C.

**Mailing Address:**    C/O MONICA ACEVEDO
Street:    1854 MONROE AVE.

City:    BRONX
State & Zip Code:    NY  10457

**Producer Name:**    Morstan General Agency
Address:    1981 Marcus Avenue
Suite 105

Lake Success        NY 11042
**Producer Number:**    01076

**Policy Period:**    From: May 5, 2004        To:  May 5, 2005
at 12:01 A.M. Standard Time at the mailing address shown above.

**Business Description:**    BUILDING OWNER

RECEIVED
NOV 0 2 2004
By DATA ENTRY

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE, AS STATED IN THIS POLICY.**

| THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT. | |
|---|---|
| | **PREMIUM** |
| Commercial General Liability Coverage Part | $5,939.00 |
| **TOTAL** | $5,939.00 |

Premium shown is payable:    $5,939    at inception;        1st Anniversary;        2nd Anniversary

Form(s) and Endorsement(s) made a part of this policy at time of issue:

SEE ATTACHED SCHEDULE OF POLICY FORMS AND ENDORSEMENTS SAA-100

By: _____        _____
Electronic Transmission        Countersigned

COMPANY

10/28/04
OPA-100 (8-98)

By Policy Management

# In Witness Clause

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary

President

EAA-100 (7-98)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

IL 00 03 11 85

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESS AUTO COVERAGE
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

GU 266 (11-85)
IL 00 03 11 85

Page 1 of 1

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

### A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

### E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

### F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

IL 00 21 11 85

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY
    NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

    A. Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

        (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

    "Hazardous properties" include radioactive, toxic or explosive properties;

    "Nuclear material" means "source material," "Special nuclear material" or "by-product material"; "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor"; "Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material"

content and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility." "Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel" or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25

grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1984

GU 276a (11-85)
IL 00 21 11 85

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

IL 01 85 04 98

# NEW YORK CHANGES - CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY - NEW YORK

**A.** For policies with fixed terms in excess of one year, or policies with no stated expiration date, except as provided in paragraph **B.**, the following applies:

The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. On each renewal or continuation of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**B.** For policies with fixed terms in excess of one year, where premium is computed and paid annually, the following applies:

1. The premium shown in the Declarations was computed based on rates and rules in effect at the time the policy was issued. Such rates and rules will be used to calculate the premium at each anniversary, for the entire term of the policy, unless the specific reasons described in paragraphs **2.** or **3.** apply.

2. The premium will be computed based on the rates and rules in effect on the anniversary date of the policy only when, subsequent to the inception of the current policy period, one or more of the following occurs:

   **a.** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

   **b.** A material physical change in the property insured, occurring after issuance or last anniversary renewal date of the policy, causes the property to become uninsurable in accordance with underwriting standards in effect at the time the policy was issued or last renewed; or

   **c.** A material change in the nature or extent of the risk, occurring after issuance or last anniversary renewal date of the policy, which causes the risk of "loss" to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed.

3. If, subsequent to the inception of the current policy period, the Limit of Insurance is increased, or Additional Coverages or Causes of Loss are insured, the rates and rules in effect at the time of the change will be applied to calculate the premium and will continue to apply to the change at subsequent anniversary dates.

Copyright, Insurance Services Office, Inc., 1997

INTERLINE
IL 02 68 04 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW YORK CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

A. Paragraphs **1.**, **2.**, **3.** and **5.** of the CANCELLA-TION Common Policy Condition are replaced by the following:

1. The first Named Insured shown in the Declarations may cancel this entire policy by mailing or delivering to us advance written notice of cancellation.

2. **CANCELLATION OF POLICIES IN EFFECT:**

   a. **60 DAYS OR LESS**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   (1) 30 days before the effective date of cancellation if we cancel for any reason not included in paragraph **A.2.a.(2)** below.

   (2) 15 days before the effective date of cancellation if we cancel for any of the following reasons:

   (a) Nonpayment of premium;

   (b) Conviction of a crime arising out of acts increasing the hazard insured against;

   (c) Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim;

   (d) After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to inception of the current policy period;

   (e) Material physical change in the property insured, occurring after issuance or last annual renewal anniversary date of the policy, that results in the property becoming uninsurable in accordance with our objective, uniformly applied underwriting standards in effect at the time the policy was issued or last renewed; or material change in the nature or extent of the risk, occurring after issuance or last annual renewal anniversary date of the policy, that causes the risk of loss to be substantially and materially increased beyond that contemplated at the time the policy was issued or last renewed;

   (f) Required pursuant to a determination by the Superintendent that continuation of our present premium volume would jeopardize our solvency or be hazardous to the interest of our policyholders, our creditors or the public;

   (g) A determination by the Superintendent that the continuation of the policy would violate, or would place us in violation of, any provision of the Insurance Code; or

 Copyright, Insurance Services Office, Inc., 1997    **Page 1 of 4**

(h) Where we have reason to believe, in good faith and with sufficient cause, that there is a probable risk of danger that the insured will destroy, or permit to be destroyed, the insured property for the purpose of collecting the insurance proceeds. If we cancel for this reason, you may make a written request to the Insurance Department, within 10 days of receipt of this notice, to review our cancellation decision. Also, we will simultaneously send a copy of this cancellation notice to the Insurance Department.

## b. FOR MORE THAN 60 DAYS

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy we issued, we may cancel only for any of the reasons listed in paragraph **A.2.a.(2)** above, provided we mail the first Named Insured written notice at least 15 days before the effective date of cancellation.

3. We will mail or deliver our notice, including the reason for cancellation, to the first Named Insured at the address shown in the policy and to the authorized agent or broker.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata.

However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies, we will be entitled to retain a minimum earned premium of 10% of the total policy premium or $60, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

B. The following is added to the CANCELLATION Common Policy Condition:

7. If one of the reasons for cancellation in paragraphs **A.2.a.(2)** or **D.2.b.(2)** exists, we may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage or endorsement initially effective subsequent to the original issuance of this policy.

C. The following Conditions are added:

### 1. NONRENEWAL

If we decide not to renew this policy we will send notice as provided in paragraph **C.3.** below.

## 2. CONDITIONAL RENEWAL

If we conditionally renew this policy subject to a:

a. Change of limits;

b. Change in type of coverage;

c. Reduction of coverage;

d. Increased deductible;

e. Addition of exclusion; or

f. Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured value added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

we will send notice as provided in paragraph **C.3.** below.

## 3. NOTICES OF NONRENEWAL AND CONDITIONAL RENEWAL

a. If we decide not to renew this policy or to conditionally renew this policy as provided in paragraphs **C.1.** and **C.2.** above, we will mail or deliver written notice to the first Named Insured shown in the Declarations at least 60 but not more than 120 days before:

(1) The expiration date; or

(2) The anniversary date if this is a continuous policy.

b. Notice will be mailed or delivered to the first Named Insured at the address shown in the policy and to the authorized agent or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

c. Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

d. If we violate any of the provisions of paragraphs **C.3.a., b.** or **c.** above by sending the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice:

(1) Coverage will remain in effect at the same terms and conditions of this policy at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the first Named Insured, during this 60 day period, has replaced the coverage or elects to cancel.

(2) On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the first Named Insured, during this additional policy period, has replaced the coverage or elects to cancel.

e. We will not send you notice of nonrenewal or conditional renewal if you, your authorized agent or broker or another insurer of yours mails or delivers notice that the policy has been replaced or is no longer desired.

D. The following provisions apply when the COMMERCIAL PROPERTY COVERAGE PART or the FARM COVERAGE PART is made a part of this policy:

1. Items **D.2.** and **D.3.** apply if this policy meets the following conditions:

    a. The policy is issued or issued for delivery in New York State covering property located in this state; and

    b. The policy insures:

        (1) For loss of or damage to structures, other than hotels or motels, used predominantly for residential purposes and consisting of no more than four dwelling units; or

        (2) For loss of or damage to personal property other than farm personal property or business property; or

        (3) Against damages arising from liability for loss of, damage to or injury to persons or property, except liability arising from business or farming; and

    c. The portion of the annual premium attributable to the property and contingencies described in **1.b.** exceeds the portion applicable to other property and contingencies.

2. Paragraph **2.** of the CANCELLATION Common Policy Condition is replaced by the following:

    **2. Procedure and Reasons for Cancellation**

    a. We may cancel this entire policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

        (1) 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        (2) 30 days before the effective date of cancellation if we cancel for any other reason.

    b. But if this policy:

        (1) Has been in effect for more than 60 days; or

        (2) Is a renewal of a policy we issued:

    we may cancel this policy only for one or more of the following reasons:

        (1) Nonpayment of premium;

        (2) Conviction of a crime arising out of acts increasing the risk of loss;

        (3) Discovery of fraud or material misrepresentation in obtaining the policy or in making a claim;

        (4) Discovery of willful or reckless acts or omissions increasing the risk of loss;

        (5) Physical changes in the covered property that make that property uninsurable in accordance with our objective and uniformly applied underwriting standards in effect when we:

            (a) Issued the policy; or

            (b) Last voluntarily renewed the policy;

        (6) The Superintendent of Insurance's determination that continuing the policy would violate Chapter 28 of the Insurance Law; or

        (7) Required pursuant to a determination by the Superintendent of Insurance that the continuation of our present premium volume would be hazardous to the interests of our policyholders, our creditors or the public.

3. The following are added:

    a. **CONDITIONAL CONTINUATION**

    Instead of cancelling this policy, we may continue it on the condition that:

        (1) The policy limits be changed; or

        (2) Any coverage not required by law be eliminated.

    If this policy is conditionally continued, we will mail or deliver to the first Named Insured written notice at least 20 days before the effective date of the change or elimination. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

b. **NONRENEWAL**

If, as allowed by the laws of New York State, we:

(1) Do not renew this policy; or

(2) Condition policy renewal upon:

(a) Change of limits; or

(b) Elimination of coverage;

we will mail or deliver written notice of nonrenewal or conditional renewal:

(a) At least 45 days; but

(b) Not more than 60 days;

before the expiration date of the policy. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

E. The following is added to the FARM PROPERTY - OTHER FARM PROVISIONS FORM - ADDITIONAL COVERAGES, CONDITIONS, DEFINITIONS and the COMMERCIAL PROPERTY COVERAGE PART:

When the property is subject to the Anti-Arson Application in accordance with New York Insurance Department Regulation No. 96, the following provisions are added:

Unless you return the completed, signed and affirmed anti-arson application to us:

1. Or our broker or agent within 45 days of the effective date of the policy, we will rescind this entire policy by giving:

   a. 5 days written notice to you; and

   b. 10 days written notice to the mortgage holder shown in the Declarations.

2. 15 days before the expiration date of the policy, we will not renew the policy. We will give written notice of nonrenewal:

   a. To you at least 5 days before the expiration date of the policy; and

   b. To the mortgage holder shown in the Declarations at least 10 days before the expiration of the policy.

   These nonrenewal provisions supersede all other such provisions of this policy including this endorsement.

If the notice in **1.** or **2.** above is mailed, proof of mailing will be sufficient proof of notice. Delivery of the notice will be the same as mailing.

F. The following applies to the COMMERCIAL PROPERTY COVERAGE PART and the FARM COVERAGE PART:

Paragraphs f. and g. of the MORTGAGE HOLDERS Condition are replaced by the following:

f. **CANCELLATION**

(1) If we cancel this policy, we will give written notice to the mortgage holder at least:

(a) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(b) 30 days before the effective date of cancellation if we cancel for any other reason.

(2) If you cancel this policy, we will give written notice to the mortgage holder. With respect to the mortgage holder's interest only, cancellation will become effective on the later of:

(a) The effective date of cancellation of the insured's coverage; or

(b) 10 days after we give notice to the mortgage holder.

g. **NONRENEWAL**

(1) If we elect not to renew this policy, we will give written notice to the mortgage holder at least 10 days before the expiration date of this policy.

(2) If you elect not to renew this policy, we will give written notice to the mortgage holder. With respect to the mortgage holder's interest only, nonrenewal will become effective on the later of:

(a) The expiration date of the policy; or

(b) 10 days after we give notice to the mortgage holder.

G. The following provisions apply when the following are made a part of this policy:
   COMMERCIAL GENERAL LIABILITY COVERAGE PART
   FARM LIABILITY COVERAGE FORM
   LIQUOR LIABILITY COVERAGE PART
   PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

1. The aggregate limits of this policy as shown in the Declarations will be increased in proportion to any policy extension provided in accordance with paragraph **C.3.d.** above.

2. The last sentence of LIMITS OF INSURANCE does not apply when the policy period is extended because we sent the first Named Insured an incomplete or late conditional renewal notice or a late nonrenewal notice.

    Copyright, Insurance Services Office, Inc., 1997    IL 02 68 04 98

03/22/2005 04:07 PM 90293_7557

POLICY NUMBER: L7180545                                    IL 09 85 01 03

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN
RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK
INSURANCE ACT OF 2002. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE
OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT OF 2002

| SCHEDULE* |
| --- |
| Terrorism Premium (Certified Acts) $ EXCLUDED |
| Additional Information, if any, concerning the terrorism premium: |
| |

\* Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

**A. Disclosure of Premium**

In accordance with the federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under that Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure of Federal Participation In Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

03/22/2005 04:07 PM 90293_7557

# COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

**EFFECTIVE DATE:** May 5, 2004
12:01 A.M., Standard Time

**POLICY NO.:** L7180545

## LIMITS OF INSURANCE

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products-Completed Operations) | $ | 2,000,000 |
| Products-Completed Operations Aggregate Limit | $ | INCLUDED |
| Personal and Advertising Injury Limit | $ | 1,000,000 |
| Each Occurence Limit | $ | 1,000,000 |
| Fire Damage Limit | $ | 50,000  ANY ONE FIRE |
| Medical Expense Limit | $ | 5,000  ANY ONE PERSON |

## RETROACTIVE DATE   (CG 00 02 ONLY)

Coverage A of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown here:

**(Enter Date or "None" if no Retroactive Date applies)**

## FORM OF BUSINESS

[ ] Individual    [ ] Joint Venture    [ ] Partnership    [X] Organization (other than Partnership or Joint Venture)

## LOCATION OF PREMISES

Location of All Premises You Own, Rent or Occupy:
Loc #
001   1864 MONROE AVE.,BRONX, NY                                            10457

## PREMIUM

| Loc # | Classification | Code No. | Premium Basis | Rate Pr/Co | All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|---|
| 001 | APART GREATER NY W/OUT ELVTR | 60022 | UNITS 25 | INCLUDED | 237.554 | INCLUDED | 5939 |
| ** | PRODUCTS-COMPLETED OPERATIONS | | | | | | |
| | ARE SUBJECT TO THE GENERAL | | | | | | |
| | AGGREAGTE LIMIT** | | | | | | |

**Total Advance Premium**          $5,939.00

## FORMS AND ENDORSEMENTS

SEE ATTACHED SCHEDULE OF POLICY FORMS AND ENDORSEMENTS SAA-100

*CL-150 (9/95)*

CG 00 01 01 96

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (Section II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (Section V).

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (Section III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

2. **Exclusions.**

   This insurance does not apply to:

   a. **Expected or Intended Injury**

      "Bodily injury" or "property damage" ex-

pected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

         (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

         (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   c. **Liquor Liability**

      "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      (1) Causing or contributing to the intoxication of any person;

      (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

Copyright, Insurance Services Office, Inc., 1994

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment."

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage to Property**

"Property damage" to:

(1) Property you own, rent or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or sub-contractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out

of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

k. **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous

accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions.**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard."

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or suit," including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit."

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit," we will defend that indemnitee if all the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee,

Copyright, Insurance Services Office, Inc., 1994

other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard."

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence."

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy.

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit.

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in a.

above; or

         (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

      (2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the "loading or unloading" of that vehicle by any insured;

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the

"occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

   (1) You;

   (2) Others trading under your name; or

   (3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

Copyright, Insurance Services Office, Inc., 1994

COMMERCIAL GENERAL LIABILITY
CG 01 63 07 98

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NEW YORK CHANGES
# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Paragraph **1.a.** of Section I - **Coverage A - Bodily Injury And Property Damage** Liability is replaced by the following:

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** And **B**.

B. Paragraph **1.a.** of Section I - **Coverage B - Personal And Advertising Injury** Liability is replaced by the following:

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** And **B**.

Copyright, Insurance Services Office, Inc., 1997

C. The following is added as Paragraph **e.** to the Duties In The Event Of Occurrence, Offense, Claim Or Suit Condition (Paragraph **2.** of Section IV - Commercial General Liability Conditions):

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   e. Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

D. The definition of "loading or unloading" in the Definitions Section does not apply.

03/22/2005 04:07 PM 90293_7557

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 21 44 11 85

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Premises:**

LOC#1 1854 MONROE AVE., BRONX, NY 10457

**Project:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury," "property damage," "personal injury," "advertising injury" and medical expenses arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 21 47 10 93

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages):

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section I - Coverages):

This insurance does not apply to:

"Personal injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1992

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

CG 21 49 01 96

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I - Coverages) is replaced by the following:

This insurance does not apply to:

f.　(1)　"Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2)　Any loss, cost or expense arising out of any:

(a)　Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b)　Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

Copyright, Insurance Services Office, Inc., 1994

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 26 21 10 91

# NEW YORK CHANGES - TRANSFER OF DUTIES WHEN A LIMIT OF INSURANCE IS USED UP

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following Condition is added to COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV):

Transfer of Duties When a Limit of Insurance Is Used Up.

a. If we conclude that, based on "occurrences," offenses, claims or "suits" which have been reported to us and to which this insurance may apply, the:

(1) General Aggregate Limit (other than the Products/Completed Operations Aggregate Limit);

(2) Products/Completed Operations Aggregate Limit;

(3) Personal and Advertising Injury Limit;

(4) Each Occurrence Limit; or

(5) Fire Damage Limit

is likely to be used up in the payment of judgments or settlements, we will notify the first Named Insured, in writing, to that effect.

b. When a limit of insurance described in paragraph a. above has actually been used up in the payment of judgments or settlements:

(1) We will notify the first Named Insured, in writing, as soon as practicable, that:

(a) Such a limit has actually been used up; and

(b) Our duty to defend "suits" seeking damages subject to that limit has also ended.

(2) We will initiate, and cooperate in, the transfer of control, to any appropriate insured, of all claims and "suits" seeking damages which are subject to that limit and which are reported to us before that limit is used up. That insured must cooperate in the transfer of control of said claims and "suits."

We agree to take such steps, as we deem appropriate, to avoid a default in, or continue the defense of, such "suits" until such transfer is completed, provided the appropriate insured is cooperating in completing such transfer.

We will take no action whatsoever with respect to any claim or "suit" seeking damages that would have been subject to that limit, had it not been used up, if the claim or "suit" is reported to us after that limit of insurance has been used up.

(3) The first Named Insured, and any other insured involved in a "suit" seeking damages subject to that limit, must arrange for the defense of such "suit" within such time period as agreed to between the appropriate insured and us. Absent any such agreement, arrangements for the defense of such "suit" must be made as soon as practicable.

c. The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph b.(2) above.

The duty of the first Named Insured to reimburse us will begin on:

(1) The date on which the applicable limit of insurance is used up, if we sent notice in accordance with paragraph a. above; or

(2) The date on which we sent notice in accordance with paragraph b.(1) above, if we did not send notice in accordance with paragraph a. above.

d. The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of our duty to defend, will not be affected by our failure to comply with any of the provisions of this Condition.

Copyright, Insurance Services Office, Inc., 1991

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

CG 26 24 08 92

# NEW YORK CHANGES - LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

    LIQUOR LIABILITY COVERAGE PART

    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

    PRODUCTS/COMPLETED OPERATIONS COVERAGE PART

    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The LEGAL ACTION AGAINST US Condition (Section IV) is replaced by the following:

**LEGAL ACTION AGAINST US**

No person or organization has a right under this Coverage Part:

a.   To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b.   To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Copyright, Insurance Services Office, Inc., 1992

(The attaching clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective                                    at 12:01 a.m. standard time, forms a part of

Policy #:    L7180545

Issued to:    1854 MONROE ST. H.C.F.C.

By:        UNITED NATIONAL SPECIALTY INSURANCE COMPANY


## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## EXCLUSION-ASSAULT AND/OR BATTERY

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

1.    This insurance does not apply to "bodily injury",  "property damage", "personal injury", or "advertising injury" arising in whole or in part out of:

   (a)    the actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, his   "employees", patrons or any other person;

   (b)    the failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or

   (c)    the negligent:
      (i)    employment;
      (ii)    investigation;
      (iii)    supervision;
      (iv)    training;
      (v)    retention;

      of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) or (b) above.

2.    For the purpose of this endorsement, the words, "assault and/or battery" are intended to include, but are not limited to, sexual assault.

3.    Subparagraph a. of 2. Exclusions of COVERAGE A (SECTION I) is deleted and replaced by the following:

   a.    "Bodily injury" or "property damage"  expected or intended from the standpoint of any insured.

SL-4 (2/98)

Countersignature

(The attaching clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective                              at 12:01 a.m. standard time, forms a part of

Policy #:    L7180545

Issued to:    1854 MONROE ST. H.C.F.C.

By:        UNITED NATIONAL SPECIALTY INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## ASBESTOS AND SILICA EXCLUSION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to:

(1)    "Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of, resulting from, caused or contributed to by asbestos or silica; or

(2)    The cost of abatement, mitigation, removal or disposal of asbestos or silica.

This exclusion also includes:

(a)    Any supervision, instructions, recommendations, warnings, or advice given or which should have been given in connection with the above; and

(b)    Any obligation to share damages with or repay someone else who must pay damages becasue of such injury or damage.

_____
                Countersignature

SL-11 (5/98) Revision

(The attaching clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective                          at 12:01 a.m. standard time, forms a part of

Policy # :    L7180545

Issued to :    1854 MONROE ST. H.C.F.C.

By :        UNITED NATIONAL SPECIALTY INSURANCE COMPANY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## EXCLUSION - LEAD LIABILITY

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to:

1.  "Bodily injury", "property damage", "personal injury" or "advertising injury" arising out of, resulting from, caused by or contributed to by lead or exposure to lead or lead paint; or

2.  The costs of abatement, mitigation, removal or disposal of lead paint or any lead containing product or material;

This exclusion also includes:

a.  Any supervision, instructions, recommendations, warnings or advice given or which should have been given with regard to the above; and

b.  Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

_____

Countersignature

SL-31 (2/98)

(The attaching clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective                                    at 12:01 a.m. standard time, forms a part of

Policy #:     L7180545

Issued to:   1854 MONROE ST. H.C.F.C.

By:           UNITED NATIONAL SPECIALTY INSURANCE COMPANY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## EXCLUSION - PUNITIVE & EXEMPLARY DAMAGES

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to punitive damages, exemplary damages, fines, penalties, treble damages, or any other increase in damages resulting from the multiplication of compensatory damages.

_____

Countersignature

SL-65 (6/98)

3/22/2005 04:07 PM 90293_7557

Policy Change
Number 01

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

IL 12 01 11 85

## POLICY CHANGES

| POLICY NO. | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| L7180545 | 05/05/2004 | UNITED NATIONAL SPECIALTY INSURANCE COMPANY |

| NAMED INSURED | AUTHORIZED REPRESENTATIVE |
|---|---|
| 1854 MONROE ST. H.C.F.C. | |

**COVERAGE PARTS AFFECTED**

Commercial General Liability

| CHANGES |
|---|
| IT IS HEREBY UNDERSTOOD AND AGREED THAT THE NAMED INSURED IS AMENDED TO READ AS FOLLOWS:<br><br>1854 MONROE AVENUE, H.D.F.C.<br>C/O MONICA ACEVEDO<br><br>NO CHANGE IN PREMIUM<br>11/16/04    AS<br>BRK: MURPHY & JORDAN, INC. |

2. REARED 01
3 2005

ENTERED

DEC 2 9 2004

By DATA ENTRY
Checked By_____

RECEIVED
DEC 0 3 2004
By DATA ENTRY

_____
Authorized Representative Signature

Rec'd Via
Electronic Transmission

DEC 0 1 2004

By Policy Management

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

GU 269 (11-85)
IL 12 01 11 85

Page 1 of 1

**EXHIBIT D**

Morstan Agency        7/20/2007 12:37 PM  PAGE  5/017  Fax Server

07/20/2007  12:13    2125148383              MURPHY&JORDAN,LLC                    PAGE  04/09

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-------------------------------------------------------X

Index No.: 15713/07
Date Purchased: 05/30/07

**SUMMONS**

EULALIA BALAGUER

Plaintiff,

-against-

1854 MONROE AVENUE HOUSING
DEVELOPMENT FUND CORPORATION,

Defendant.

-------------------------------------------------------X

Plaintiffs designate BRONX
County as the place of trial.

The basis of venue is:
Plaintiff residence

Plaintiff resides at:
1854 Monroe Avenue
Bronx, New York 10457
County of BRONX

To the above named Defendant:

You are hereby summoned to answer the complaint in this action, and to serve a copy
of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance
on the Plaintiff's attorney(s) within twenty days after the service of this summons, exclusive of the
day of service, where service is made by delivery upon you personally within the state, or, within 30
days after completion of service where service is made in any other manner. In case of your failure
to appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated:        NEW YORK, NEW YORK
              May 25, 2007

                                        MICHAEL C. BEATTY
                                        FELDMAN, KRONFELD & BEATTY
                                        Attorneys for Plaintiff
                                        EULALIA BALAGUER
                                        42 Broadway, 19th Floor
                                        New York, New York 10004
                                        212-425-0230

TO:
1854 MONROE AVENUE HOUSING
DEVELOPMENT FUND CORPORATION
1854 Monroe Avenue
Bronx, NY 10457

Morstan Agency        7/20/2007 12:37 PM  PAGE  6/017  Fax Server

07/20/2007  12:13   2125148303          MURPHY&JORDAN,LLC                PAGE  05/09

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX ————————————————————X   Index No.: 15 713 { 07

EULALIA BALAGUER,                                Date Purchased: 05/30/07

                                  Plaintiff,     VERIFIED COMPLAINT

         -against-

1854 MONROE AVENUE HOUSING
DEVELOPMENT FUND CORPORATION,

                                  Defendant.
————————————————————————————————X

         Plaintiff, by FELDMAN, KRONFELD & BEATTY, her attorneys, as and for her

complaint herein, respectfully alleges:

         FIRST:      That upon information and belief, at all times hereinafter mentioned, the

defendant, 1854 MONROE AVENUE HOUSING DEVELOPMENT FUND CORPORATION,

was and still is engaged in owning, operating and maintaining a residential apartment complex,

and more particularly owned, operated and maintained such premises located at 1854 Monroe

Avenue, Bronx, New York.

         SECOND:     That at all times hereinafter mentioned, the defendant was a domestic

corporation and/or foreign corporation authorized to do business and doing business in the State

of New York.

         THIRD:      That upon information and belief, at all times hereinafter mentioned, the

defendant, its agents, servants and/or employees, operated the premises located as aforesaid.

         FOURTH:     That upon information and belief, at all time hereinafter mentioned, the

defendant, its agents servants and/or employees, maintained the premises located as aforesaid.

1

FIFTH:    That upon information and belief, at all the times hereinafter mentioned, the defendant, its agents servants and/or employees, controlled the premises located as aforesaid.

SIXTH:    That upon information and belief, at all the times hereinafter mentioned, the defendant, its agents, servants and/or employees, at and prior to the times hereinafter mentioned, wholly disregarded their duty and failed to use reasonable care in the ownership, operation, maintenance, use care and control of the aforesaid premises, and failed to keep same in a safe condition, and for a long period of time, carelessly and negligently caused and permitted an unlawful and dangerous condition to exist and remain thereat, in that the defendant, its agents, servants and/or employees, caused and permitted a defective flooring thereat and to remain in a dangerous and hazardous condition, thereby creating a dangerous, hazardous and unsafe condition, trap and a toe hold, and failed to correct the said unsafe condition, and defendant failed in any manner to warn or notify persons lawfully traversing the same and more particularly the plaintiff, of the said dangerous and unsafe condition, or to have any barricades, signs or other precautions, all of which condition the defendant had actual as well as constructive notice.

SEVENTH:    That on or about December 20, 2006, while the plaintiff was lawfully at the aforesaid premises owned, operated, maintained, and controlled by the defendant as aforesaid, and without any fault or negligence on the part of the plaintiff, and wholly and solely by reason of the negligence of the defendant, its agents, servants and employees, in the ownership operation, maintenance and control of the aforesaid premises as more particularly set forth in paragraph "SIXTH" of this Complaint, she was caused to be precipitated and fall, causing the plaintiff to sustain severe injuries hereinafter more fully set forth.

EIGHTH:    That the plaintiff was injured.

Morstan Agency        7/20/2007 12:37 PM  PAGE   8/017   Fax Server

07/20/2007  12:13    2125148383          MURPHY & JORDAN, LLC          PAGE  07/09

NINTH:    That as a direct and immediate result of the foregoing, and without any act on the part of the plaintiff contributing thereto, the plaintiff sustained severe personal injuries and suffered great bodily pains and mental anguish as well as nervous shock, all of which rendered her sick, sore, lame and disabled and prevented her from attending to her usual duties and functions, and the plaintiff was obliged to and did submit to medical aid and assistance in an endeavor to be cured of said injuries, and was confined to bed and home for a period of time as a result of the said injuries, some of which injuries, upon information and belief, will be permanent, and was thereby caused to suffer a loss of quality of life.

TENTH:    That no act or omission on the part of the plaintiff caused or contributed to the happening of said accident, and it was caused solely and wholly by the negligence of the defendant, its agents, servants and employees.

ELEVENTH:  That by reason thereof, the plaintiff has been damaged in a sum that exceeds the jurisdictional limits of all lower courts.

WHEREFORE, plaintiff demands judgment against the defendant herein in a sum that exceeds the jurisdictional limits of all lower courts, together with the interest, costs and disbursements of this action.

Dated: New York, New York
May 25, 2007

FELDMAN, KRONFELD & BEATTY

By: _____
MICHAEL C. BEATTY
FELDMAN, KRONFELD & BEATTY
Attorneys for Plaintiff, EULALIA BALAGUER
42 Broadway, 19th Floor
New York, New York 10004
(212)425-0230

3

Morstan Agency        7/20/2007 12:37 PM   PAGE   9/017   Fax Server

07/20/2007  12:13   2125148383           MURPHY&JORDAN,LLC            PAGE  08/09

## ATTORNEY'S VERIFICATION

MICHAEL C. BEATTY, an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:  I am an attorney at FELDMAN, KRONFELD & BEATTY, attorneys of record for Plaintiff, Eulalia Balaguer.  I have read the annexed COMPLAINT and know the contents thereof, and the same are true to my knowledge, except those matters therein that are stated to be alleged upon information and belief, and as to those matters I believe them to be true.  My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files.

This verification is made by me because Plaintiff is not presently in the county wherein I maintain my offices.

DATED:     New York, New York
           May 25, 2007

MICHAEL C. BEATTY

07/20/2007  12:13    2125148303          MURPHY&JORDAN,LLC          PAGE  09/09

Index No. 15713/07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

EULALIA BALAGUER,

                        Plaintiff,

        -against-

1854 MONROE AVENUE HOUSING
DEVELOPMENT FUND CORPORATION,

                        Defendant.

## SUMMONS AND VERIFIED COMPLAINT

### FELDMAN, KRONFELD & BEATTY
*Attorneys for Plaintiff(s)*
42 Broadway, 19th Floor
New York, New York 10004
Tel: 212-425-0230
Fax: 212-809-6174

TO:

**EXHIBIT E**

P.O. Box 4500, Manhasset, NY 11030
Tele: 516-488-4747 Ext. 3226
Fax: 516-302-8050
Email: Hrivera@morstan.com

**Morstan General Agency, Inc.**

# Fax

| | | | |
|---|---|---|---|
| **To:** | *United National ( Gl Claims Dept* | **From:** | *Hilda Rivera-DeLeon* |
| **Fax:** | *610-660+-8885* | **Pages:** | |
| **Re:** | *1854 Monroe Ave, H.D.F.C* | **Date:** | *7/20/07* |
| **Pol#:** | *L7I80545* | | |

**Date of Loss: 12/20/06    Claimant: Eulalia Balaguer**

*Enclosed please find accord loss form along with Summons.*

*We ask for your further review and acknowledgement as this is a first notice to our office.*

*Copy of policy is attached for coverage verification.*

*Thank you,*
*Hilda Rivera*

*Cc: Pamela @ Murphy & Jordan*

# MURPHY & JORDAN, LLC

*ESTABLISHED 1926*
*INSURANCE BROKERS*
32 OLD SLIP, 8TH FL.
NEW YORK, NY 10005
TEL: (212) 899-8981
FAX: (212)514-8303
phayes@brownstoneagency.com

---

### FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| **TO:** Hilda | **FROM:** Pamela Hayes |
| **COMPANY:** Morstan General Agency | **DATE:** July 20, 2007 |
| **FAX NUMBER:** (516) 302-8050 | **TOTAL NO. OF PAGES INCLUDING COVER:** 9 |
| **PHONE NUMBER:** (516) 488-4747 | **SENDER'S REFERENCE NUMBER:** |
| **RE:** Insured: 1854 Monroe Avenue HDFC  Date of Loss: 12/20/06  Type of Loss: Liability Claim | **YOUR REFERENCE NUMBER:** Policy No.: L7180545  Company: United National Specialty Ins Co.  Claimant: Eulalia Balaguer |

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

---

**NOTES/COMMENTS:**

1ˢᵗ Report attached along with Summons and Verified Complaint. Please process accordingly.

Kindly acknowledge receipt with the claim number and name of the adjuster assigned.

Thank you.

Morstan Agency                7/20/2007 12:37 PM  PAGE  3/017  Fax Server

07/20/2007  12:13   2125148303          MURPHY&JORDAN, LLC          PAGE 02/09

| ACORD | GENERAL LIABILITY NOTICE OF OCCURRENCE / CLAIM | | DATE (MM/DD/YYYY) 07/20/2007 |
|---|---|---|---|

| AGENCY PHONE (A/C, No, Ext): 212-962-5620 | NOTICE OF OCCURRENCE / NOTICE OF CLAIM | DATE OF OCCURRENCE AND TIME 12/20/06 | AM / PM | DATE OF CLAIM | PREVIOUSLY REPORTED | YES | NO |

MURPHY & JORDAN LLC
32 OLD SLIP
NEW YORK, NY 10005

| EFFECTIVE DATE 06/05/2006 | EXPIRATION DATE 05/05/2007 | POLICY TYPE ☐ OCCURRENCE ☐ CLAIMS MADE | RETROACTIVE DATE |

FAX
E-MAIL ADDRESS

| COMPANY UNITED NATIONAL SPECIALTY INS. CO. | NAIC CODE | MISCELLANEOUS INFO (Site & location codes) |

| CODE: | SUB CODE: | POLICY NUMBER L7180545 | REFERENCE NUMBER |

AGENCY CUSTOMER ID:

**INSURED**

NAME AND ADDRESS
1854 MONROE AVENUE H.D.F.C.
C/O MONICA ACEVEDO
1854 MONROE AVENUE
BRONX, NY 10457

ACC BRD # OR PERS:

**CONTACT**

NAME AND ADDRESS
MONICA ACEVEDO

CONTACT INSURED

WHERE TO CONTACT

WHEN TO CONTACT

RESIDENCE PHONE (A/C, No):  BUSINESS PHONE (A/C, No, Ext):

RESIDENCE PHONE (A/C, No):  BUSINESS PHONE (A/C, No, Ext): (718) 299-1483

CELL PHONE (A/C, No):  E-MAIL ADDRESS

CELL PHONE (A/C, No):  E-MAIL ADDRESS

**OCCURRENCE**

LOCATION OF OCCURRENCE (include city & state)
1854 MONROE AVENUE
BRONX, NY

AUTHORITY CONTACTED

DESCRIPTION OF OCCURRENCE (Use separate sheet if necessary)
EULALIA BALAGUER ALLEGEDLY SLIPPED AND FELL AT THE ABOVE LOCATION DUE TO INSURED'S NEGLIGENCE. SUMMONS AND VERIFIED COMPLAINT ATTACHED.

**POLICY INFORMATION**

COVERAGE PART OR FORMS (report form, form and uniform dates)

| GENERAL AGGREGATE $2,000,000 | PROD/COMP OP AGG | PERS & ADV INJ $2,000,000 | EACH OCCURRENCE $1,000,000 | FIRE DAMAGE $50,000 | MEDICAL EXPENSE $5,000 | DEDUCTIBLE | PD |

| ☐ UMBRELLA ☐ EXCESS CARRIER: | | LIMITS: | | AGGR | PER OCCURRENCE | SIR/RED |

LOWER PART EXCESS

**TYPE OF LIABILITY**

PREMISES: INSURED IS  ☐ OWNER  ☐ TENANT  ☐ OTHER:

TYPE OF PREMISES

OWNER'S NAME & ADDRESS (if not insured)

OWNER'S PHONE (A/C, No, Ext)

PRODUCTS: INSURED IS  ☐ MANUFACTURER  ☐ VENDOR  ☐ OTHER:

TYPE OF PRODUCT

MANUFACTURER'S NAME & ADDRESS (if not insured)

MANUFACTURER PHONE (A/C, No, Ext)

WHERE CAN PRODUCT BE SEEN?

OTHER LIABILITY INC. OPERATIONS (Explain)

**INJURED/PROPERTY DAMAGED**

NAME & ADDRESS (Injured/Owner)
EULALIA BALAGUER C/O FELDMAN, KRONFELD & BEATTY
42 BROADWAY, 18TH FLOOR - NEW YORK, NY 10004

PHONE (A/C, No, Ext) (212) 425-0230

PHONE (A/C, No, Ext)

| AGE | SEX | OCCUPATION | EMPLOYER'S NAME & ADDRESS | | |

DESCRIBE INJURY  ☐ FATALITY  PERSONAL INJURIES

WHERE TAKEN

WHAT WAS INJURED DOING?

ESTIMATE AMOUNT  WHERE CAN PROPERTY BE SEEN?

WHEN CAN PROPERTY BE SEEN?

DESCRIBE PROPERTY (Type, model, etc.)

**WITNESSES**

NAME & ADDRESS

BUSINESS PHONE (A/C, No, Ext)

RESIDENCE PHONE (A/C, No)

REMARKS
INSURED RECEIVED THE SUMMONS ON 7/16/07.

| REPORTED BY INSURED | REPORTED TO MURPHY & JORDAN | SIGNATURE OF INSURED | SIGNATURE OF PRODUCER Pamela Hayes |

ACORD 3 (2006/02)       NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE       © ACORD CORPORATION 1988-2006

07/20/2007  12:13    2125148303          MURPHY&JORDAN,LLC          PAGE  03/09

State of New York - Department of State
Division of Corporations

**Party Served:**                           **Plaintiff/Petitioner:**
1854 MONROE AVENUE HOUSING DEVELOPMENT       BALAGUER, EULALIA
FUND CORPORATION


1854 MONROE AVENUE HOUSING DEVELOPMENT F
1854 MONROE AVENUE
BRONX, NY 00000


Dear Sir/Madam:
Enclosed herewith is a legal document which was served upon the Secretary of
State on 07/02/2007 pursuant to SECTION 306 OF THE BUSINESS CORPORATION LAW.
This copy is being transmitted pursuant to such statute to the address
provided for such purpose.


                                          Very truly yours,
                                          Division of Corporations

Morstan Agency          7/20/2007 12:37 PM  PAGE  5/017   Fax Server

07/20/2007  12:13   2125148303          MURPHY&JORDAN,LLC              PAGE  04/09

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-----------------------------------------------------------------X

EULALIA BALAGUER

                              Plaintiff,

              -against-

1854 MONROE AVENUE HOUSING
DEVELOPMENT FUND CORPORATION,

                              Defendant.

-----------------------------------------------------------------X

Index No.: 15 713 / 07
Date Purchased: 05/30/07

**SUMMONS**

Plaintiffs designate BRONX
County as the place of trial.

The basis of venue is:
Plaintiff residence

Plaintiff resides at:
1854 Monroe Avenue
Bronx, New York 10457
County of BRONX

To the above named Defendant:

    **You are hereby summoned** to answer the complaint in this action, and to serve a copy
of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance
on the Plaintiff's attorney(s) within twenty days after the service of this summons, exclusive of the
day of service, where service is made by delivery upon you personally within the state, or, within 30
days after completion of service where service is made in any other manner. In case of your failure
to appear or answer, judgment will be taken against you by default for the relief demanded in the
complaint.

Dated:        NEW YORK, NEW YORK
              May 25, 2007

                                          _____
                                          MICHAEL C. BEATTY
                                          FELDMAN, KRONFELD & BEATTY
                                          Attorneys for Plaintiff
                                          EULALIA BALAGUER
                                          42 Broadway, 19th Floor
                                          New York, New York 10004
                                          212-425-0230

TO:
1854 MONROE AVENUE HOUSING
DEVELOPMENT FUND CORPORATION
1854 Monroe Avenue
Bronx, NY 10457

Morstan Agency          7/20/2007 12:37 PM  PAGE   6/017  Fax Server

07/20/2007  12:13   2125148303          MURPHY&JORDAN,LLC          PAGE  05/09

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
--------------------------------------------------------X      Index No.: 15 713 | 07

EULALIA BALAGUER,                                              Date Purchased: 05/30/07

                                    Plaintiff,                 VERIFIED COMPLAINT

            -against-

1854 MONROE AVENUE HOUSING
DEVELOPMENT FUND CORPORATION,

                                    Defendant.
--------------------------------------------------------X

        Plaintiff, by FELDMAN, KRONFELD & BEATTY, her attorneys, as and for her

complaint herein, respectfully alleges:

        FIRST:        That upon information and belief, at all times hereinafter mentioned, the

defendant, 1854 MONROE AVENUE HOUSING DEVELOPMENT FUND CORPORATION,

was and still is engaged in owning, operating and maintaining a residential apartment complex,

and more particularly owned, operated and maintained such premises located at 1854 Monroe

Avenue, Bronx, New York.

        SECOND:       That at all times hereinafter mentioned, the defendant was a domestic

corporation and/or foreign corporation authorized to do business and doing business in the State

of New York.

        THIRD:        That upon information and belief, at all times hereinafter mentioned, the

defendant, its agents, servants and/or employees, operated the premises located as aforesaid.

        FOURTH:       That upon information and belief, at all time hereinafter mentioned, the

defendant, its agents servants and/or employees, maintained the premises located as aforesaid.

1

FIFTH:    That upon information and belief, at all the times hereinafter mentioned, the defendant, its agents servants and/or employees, controlled the premises located as aforesaid.

SIXTH:    That upon information and belief, at all the times hereinafter mentioned, the defendant, its agents, servants and/or employees, at and prior to the times hereinafter mentioned, wholly disregarded their duty and failed to use reasonable care in the ownership, operation, maintenance, use care and control of the aforesaid premises, and failed to keep same in a safe condition, and for a long period of time, carelessly and negligently caused and permitted an unlawful and dangerous condition to exist and remain thereat, in that the defendant, its agents, servants and/or employees, caused and permitted a defective flooring thereat and to remain in a dangerous and hazardous condition, thereby creating a dangerous, hazardous and unsafe condition, trap and a toe hold, and failed to correct the said unsafe condition, and defendant failed in any manner to warn or notify persons lawfully traversing the same and more particularly the plaintiff, of the said dangerous and unsafe condition, or to have any barricades, signs or other precautions, all of which condition the defendant had actual as well as constructive notice.

SEVENTH:    That on or about December 20, 2006, while the plaintiff was lawfully at the aforesaid premises owned, operated, maintained, and controlled by the defendant as aforesaid, and without any fault or negligence on the part of the plaintiff, and wholly and solely by reason of the negligence of the defendant, its agents, servants and employees, in the ownership operation, maintenance and control of the aforesaid premises as more particularly set forth in paragraph "SIXTH" of this Complaint, she was caused to be precipitated and fall, causing the plaintiff to sustain severe injuries hereinafter more fully set forth.

EIGHTH:    That the plaintiff was injured.

2

NINTH:     That as a direct and immediate result of the foregoing, and without any act on the part of the plaintiff contributing thereto, the plaintiff sustained severe personal injuries and suffered great bodily pains and mental anguish as well as nervous shock, all of which rendered her sick, sore, lame and disabled and prevented her from attending to her usual duties and functions, and the plaintiff was obliged to and did submit to medical aid and assistance in an endeavor to be cured of said injuries, and was confined to bed and home for a period of time as a result of the said injuries, some of which injuries, upon information and belief, will be permanent, and was thereby caused to suffer a loss of quality of life.

TENTH:     That no act or omission on the part of the plaintiff caused or contributed to the happening of said accident, and it was caused solely and wholly by the negligence of the defendant, its agents, servants and employees.

ELEVENTH: That by reason thereof, the plaintiff has been damaged in a sum that exceeds the jurisdictional limits of all lower courts.

WHEREFORE, plaintiff demands judgment against the defendant herein in a sum that exceeds the jurisdictional limits of all lower courts, together with the interest, costs and disbursements of this action.

Dated: New York, New York
       May 25, 2007

FELDMAN, KRONFELD & BEATTY

By: _____
    MICHAEL C. BEATTY
    FELDMAN, KRONFELD & BEATTY
    Attorneys for Plaintiff, EULALIA BALAGUER
    42 Broadway, 19th Floor
    New York, New York 10004
    (212)425-0230

3

87/20/2007  12:13    2125148383              MURPHY&JORDAN,LLC              PAGE  08/09

## ATTORNEY'S VERIFICATION

MICHAEL C. BEATTY, an attorney duly admitted to practice before the Courts of the State of New York, affirms the following to be true under the penalties of perjury:  I am an attorney at FELDMAN, KRONFELD & BEATTY, attorneys of record for Plaintiff, Eulalia Balaguer.  I have read the annexed COMPLAINT and know the contents thereof, and the same are true to my knowledge, except those matters therein that are stated to be alleged upon information and belief, and as to those matters I believe them to be true.  My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files.

   This verification is made by me because Plaintiff is not presently in the county wherein I maintain my offices.

DATED:    New York, New York
          May 23, 2007

                              _____
                                  MICHAEL C. BEATTY

4

Morstan Agency        7/20/2007 12:37 PM  PAGE  10/017   Fax Server

07/20/2007  12:13    2125148303            MURPHY&JORDAN,LLC            PAGE  09/09

Index No. 15713/07

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

EULALIA BALAGUER,

Plaintiff,

-against-

1854 MONROE AVENUE HOUSING
DEVELOPMENT FUND CORPORATION,

Defendant.

## SUMMONS AND VERIFIED COMPLAINT

**FELDMAN, KRONFELD & BEATTY**
*Attorneys for Plaintiff(s)*
42 Broadway, 19th Floor
New York, New York 10004
Tel: 212-425-0230
Fax: 212-809-6174

TO:

**EXHIBIT F**

 **UnitedAmerica** Insurance Group

Penn-America Group, Inc.
Penn-America Insurance Company
Penn-Star Insurance Company
Penn-Patriot Insurance Company

United National Group
United National Insurance Company
Diamond State Insurance Company
United National Specialty Insurance Company
United National Casualty Insurance Company

Stan Doniger
Direct Line:  (610) 747-1046
sdoniger@unitednat.com

August 2, 2007

**VIA UPS GROUND**
**AND U.S. FIRST CLASS MAIL**

1854 Monroe Avenue H.D.F. C.
C/O Monica Acevedo
1854 Monroe Avenue
Bronx, NY  10457

Re:    **Claim No:**     **07004861**
        **Insured:**       **1854 Monroe Avenue H.D.F.C.**
        **Claimant:**     **Eulalia Balaguer**
        **Date/Loss:**    **12/20/2006**

Dear Ms. Acevedo:

United National Specialty Insurance Company was notified of the pendancy of a lawsuit filed in the Supreme Court of The State of New York, County of Bronx, Index #15713/07, entitled Eulalia Balaguer vs. 1854 Monroe Avenue Housing Development Corporation.

United National Specialty Insurance Company was notified of this claim by virtue of it having issued its' Commercial Lines General Liability policy L7180545, effective from May 5, 2006 to May 5, 2007 to 1854 Monroe Avenue H D F C. The policy has a potential to provide $1,000,000 Combined Single Limits Liability Coverage, subject to a policy year general aggregate of $2,000,000 and $5000 medical payments coverage.

We are writing to you due to your failure, to date, to cooperate in the investigation of this matter and your lack of assistance in arranging for the interviewing and statementizing of knowledgeable people with reference to the work done in the claimant's apartment which allegedly caused her to be injured. We are unable to identify the people who did the work and what was there relationship to you.

Three Bala Plaza East • Suite 300 • Bala Cynwyd, PA 19004 • P: 610.664.1500 • F: 610.660.8885
A member of UnitedAmerica Indemnity, Ltd.

07004861-5407/2007

Page 2

The purpose of this letter is to inform you there will be no coverage under the terms of United National Insurance Company's policy for this claim if you do not immediately cooperate with the investigation and defense of this claim. You have 10 business days to comply with the terms of this letter. We have obtained an extension of time to answer the complaint until August 25, 2007. After that time, you will be in default and your assets will be exposed.

The policy of insurance issued to 1854 Monroe Avenue H.D.F.C. reads as follows:

### SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III Limits of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is Covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A & B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Page 3

We now direct your attention to Section V - Definitions, which states as follows:

### SECTION V – DEFINITIONS

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

12.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15.    "Property damage" means:

   a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

   b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

We now direct your attention to SECTION IV COMMERCIAL GENERAL LIABILITY CONDITIONS, which states as follows:

### 2.    Duties In The Event Of Occurrence, Offense, Claim or Suit

   a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1)    How when and where the "occurrence" or offense took place;

      (2)    The names and addresses of any injured persons and witnesses; and

      (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b.    If a claim is made or a "suit" is brought against any insured, you must:

      (1)    Immediately record the specifics of the claim or "suit" and the date received, and

      (2)    Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

   c.    You and any other involved insured must:

Page 4

(1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)    Authorize us to obtain records and other information;

(3)    Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.    No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

e.    Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

**Your continued lack of cooperation in accordance with the terms and conditions of the policy of insurance issued to your company may result in the denial of coverage in this matter. I urge you to contact me immediately and assist me in the investigation of this claim.**

If any additional information affects our position in this matter, United National Specialty Insurance Company reserves the right to withdraw, revise or supplement this letter. Further, this letter should not be construed to limiting any other defenses potentially available under the policy as additional provisions may limit or exclude coverage for the claims asserted. We also reserve the right to institute a Declaratory Judgment action on the issues relating to coverage, if we believe this is appropriate.

We will be happy to discuss with you any concerns 1854 Monroe Avenue H.D.F.C. may have about the coverage issues raised in this letter. If you have any questions or concerns, you can reach me at (610) 747-1046.

Sincerely,

UNITED NATIONAL SPECIALTY INSURANCE COMPANY

Stanley Doniger
Claims Examiner

/SD

Page 5

cc:     Morstan General Agency
        P O Box 4500
        Manhasset, NY  11030-4500

        Murphy & Jordan
        32 Old I Slip 8th Floor
        New York, NY  1000

**EXHIBIT G**

Investigations   Trial Preparation   Adjusting



## BRAATEN
### ASSOCIATES

email: abraa@optonline.net

597 Colonial place
Baldwin, ny 11510
telephone    516-546-4054
fax             516-546-5118

## INITIAL REPORT

August 3, 2007

Attn:  Mr. Stanley Doniger
**UNITED NATIONAL GROUP**
3 Bala Plaza East – Suite 300
Bala Cynwyd, PA  19004

| | | |
|---|---|---|
| Claim no. | : | 07004861 |
| Claimant | : | Eulalia Balaguer |
| Insured | : | 1854 Monroe Avenue, HDFC |
| Date/Acc | : | 12/20/2006 |
| Our file no. | : | BA-827 |

## ENCLOSURES

1. ███████████████████████

2. ███████████████████████████
███████████

3. ████████████████████████

4. ██████████████

## DESCRIPTION OF LOSS

This case is in suit. ████████████████████████
████████████

1

**SCENE CANVASS/PHOTOS**

On 08/01/07 we proceeded to 1854 Monroe Avenue, Bronx, NY and ▄▄▄▄▄
▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄
▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄▄ The building seems to be in
fair condition.  The claimant lives in apt. 1B on the ground floor. ▄▄▄▄▄
▄▄▄▄▄

This is a walk-up and the super, ▄▄▄▄ lives in the basement.  He was not at
home.  I canvassed the building and some tenants, all Hispanic, did not really
know the claimant, who stays to herself.  They were not aware of her injuries,
saying she does not get out much.  They did not recall an ambulance at the
house, but they are not always home. They were able to provide the super
▄▄▄▄▄ phone number, ▄▄▄▄▄▄▄▄   We have left messages with no
response to date.



**PROPERTY DEED**

We obtained a copy of the subject Property Deed which indicates the insured
acquired this property on 05/01/1998.

**CLAIMANT/REPRESENTATION**

**Eulalia Balaguer** resides in apt. 1B in our insured's building.    She is represented by the law firm of Feldman, Kronfeld and Beatty, 32 Broadway, 19th floor, New York, NY  10004, telephone (212) 425-0230.

**WORK TO BE DONE**

1.    Continue our attempts to contact and interview the building super, ▓▓▓▓ and obtain his version of the incident.



Respectfully submitted,
**Allen Braaten** – Adjuster
**BRAATEN ASSOCIATES**

**EXHIBIT H**

Investigations    Trial Preparation    Adjusting



**BRAATEN**
ASSOCIATES

**email**: abraa@optonline.net

597 Colonial place
Baldwin, ny 11510
telephone    516-546-4054
fax              516-546-5118

## FINAL REPORT

August 20, 2007

Attn: Mr. Stanley Doniger
**UNITED NATIONAL GROUP**
3 Bala Plaza East – Suite 300
Bala Cynwyd, PA 19004

| | | |
|---|---|---|
| Claim no. | : | 07004861 |
| Claimant | : | Eulalia Balaguer |
| Insured | : | 1854 Monroe Avenue, HDFC |
| Date/Acc | : | 12/20/2006 |
| Our file no. | : | BA-827 |

## DESCRIPTION OF LOSS

This case is in suit. She is alleging ████████████████████████
████████████████████████████

## SCENE CANVASS

As instructed, on 08/15/07 we returned to 1854 Monroe Avenue, Bronx, NY.
The super named ██████ was nowhere to be found. He lives in the basement
apartment. A reply memo was left at his door.

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████



messages on his phone and with relatives at his phone number

## CLAIMANT/REPRESENTATION

**Eulalia Balaguer** resides in apt. 1B in our insured's building.   She is represented by the law firm of Feldman, Kronfeld and Beatty, 32 Broadway, 19th floor, New York, NY 10004, telephone (212) 425-0230.

## WORK COMPLETED

You recently indicated you were able to determine that the claimant slipped on flooring glue put down by her "brother" who apparently was doing the work. Therefore, as instructed, we will inactivate our file at this time. In the meantime, should you have any questions or comments, please contact this office at 516-546-4054.

Respectfully submitted,
**Allen Braaten** – Adjuster
***BRAATEN ASSOCIATES***

**EXHIBIT I**

## Doniger, Stanley

| | |
|---|---|
| **From:** | Cruz, Diane |
| **Sent:** | Monday, August 20, 2007 10:52 AM |
| **To:** | Doniger, Stanley |
| **Subject:** | 07004861 |

I spoke with the insured - Beatrice Echavarria at 718-299-1975, she is the owner and president of the management company for this location. She "hired" her brother to complete repairs in the Balaguer apartment. When he returns home from work this evening, she will ask him if she ever paid him for his services as she does not remember. The tenant had complained to the City about the lack of repairs to the unit and the insured was understandably upset by this. The brother, completed some repairs in both the bathroom and the kitchen. In the kitchen he was replacing floor tiles. The tenant wears long pants and shuffles around in slippers. She was warned to stay out of the kitchen until the glue for the floor tiles had set. She entered the kitchen, her slipper or pant leg stuck to the glue and she was caused to fall. The tenant is described as difficult.

The insured was made aware of the event and resultant injury a few days after Balaguer returned from the hospital. However, the insured was not aware that a claim would be made until she received the lawsuit.

**Diane Cruz**
Senior Claims Examiner II
Professional Liability Claims Department
**UnitedAmerica** Insurance Group
   *Members*
   Penn-America Group
   United National Group
Three Bala Plaza East
Suite 300
Bala Cynwyd, PA 19004
610.660.5473
610.660.8885 fax

Commercial Binding Authority products, visit www.penn-america.com.
Specialty and Brokerage products, visit www.unitednat.com.

This message is intended only for the addressee and may contain information that is confidential or privileged. Any use of this information other than by the intended recipient is prohibited. If you received this message in error, please send a reply e-mail to the sender and delete the e-mail.

**EXHIBIT J**

⊙ **UnitedAmerica** Insurance Group

Penn-America Group, Inc.ᵇ
Penn-America Insurance Companyᵇ
Penn-Star Insurance Companyᵇ
Penn-Patriot Insurance Company

United National Groupᵇ
United National Insurance Companyᵇ
Diamond State Insurance Companyᵇ
United National Specialty Insurance Companyᵇ
United National Casualty Insurance Companyᵇ

Stan Doniger
Direct Line:  (610) 747-1046
sdoniger@unitednat.com

August 21, 2007

**VIA UPS GROUND
AND U.S. FIRST CLASS MAIL**

1854 Monroe Avenue H.D.F. C.
C/O Monica Acevedo
1854 Monroe Avenue
Bronx, NY  10457

Re:   **Claim No:**      07004861
      **Insured:**       **1854 Monroe Avenue H.D.F.C.**
      **Claimant:**      **Eulalia Balaguer**
      **Date/Loss:**     **12/20/2006**

Dear Ms. Acevedo:

United National Specialty Insurance Company was notified of the pendency of a lawsuit filed in the Supreme Court of The State of New York, County of Bronx, Index #15713/07, entitled Eulalia Balaguer vs. 1854 Monroe Avenue Housing Development Corporation.

United National Specialty Insurance Company was notified of this claim by virtue of it having issued its' Commercial Lines General Liability policy L7180545, effective from May 5, 2006 to May 5, 2007 to 1854 Monroe Avenue H D F C. The policy has a potential to provide $1,000,000 Combined Single Limits Liability Coverage, subject to a policy year general aggregate of $2,000,000 and $5000 medical payments coverage.

When I wrote to you on August 2, 2007 advising you of your lack of cooperation and asking for you or your representative to immediately contact me, Beatriz Echavarria contacted me, representing she is the president of the management company for your company at the location involved and was speaking to us on your behalf. She informed us she hired her brother to complete repairs in the claimant's apartment. The claimant, Ms. Balaguer, had made complaints to the City of New York about conditions in her apartment which you were aware of. In the process of making the repairs to the apartment in question, Ms. Balaguer was injured. With days of the injury, you were made aware of this injury, as related by Ms. Echavarria.

---

Three Bala Plaza East • Suite 300 • Bala Cynwyd, PA 19004 • P: 610.664.1500 • F: 610.660.8885
*A member of UnitedAmerica Indemnity, Ltd.*

07004861-8181/2007

Page 2

**The purpose of this letter is to inform you there is no coverage under the terms of United National Specialty Insurance Company's policy for this loss.**

The policy of insurance issued to 1854 Monroe Avenue H.D.F.C. reads as follows:

### SECTION I - COVERAGES
### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent. However we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III Limits of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is Covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A & B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

We now direct your attention to Section V - Definitions, which states as follows:

### SECTION V – DEFINITIONS

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

Page 3

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

We now direct your attention to SECTION IV COMMERCIAL GENERAL LIABILITY CONDITIONS, which states as follows:

2. **Duties In The Event Of Occurrence, Offense, Claim or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or a "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received, and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

Page 4

   (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

e. Notice given by or on behalf of the insured, or written notice by or on behalf of the injured person or any other claimant, to any agent of ours in New York State, with particulars sufficient to identify the insured, shall be considered to be notice to us.

**United National Specialty Insurance Company did not receive notice of this loss for over 7 months after the date of the loss. There is no coverage for this loss because of your violation of the conditions section of the policy.**

**By copy of this letter to the claimant's attorney ,we are also disclaiming directly to claimant's attorney as he also failed to comply with the policy conditions set forth above by failing to notify us of the "occurrence" and or claim as soon as practicable.**

If any additional information affects our position in this matter, United National Specialty Insurance Company reserves the right to withdraw, revise or supplement this letter. Further, this letter should not be construed to limiting any other defenses potentially available under the policy as additional provisions may limit or exclude coverage for the claims asserted. We also reserve the right to institute a Declaratory Judgment action on the issues relating to coverage, if we believe this is appropriate.

Should you wish to take this matter up with the New York State Insurance Department, you may write to, or visit the Consumer Services Bureau, New York State Insurance Department, at either 25 Beaver Street, New York, New York 10004; Agency Building, 1 Governor A. Rockefeller, Empire State Plaza, Albany New York 12257; or the Walter Mahoney Office Building, 65 Court Street, Buffalo, New York 14202. You may also contact them at their toll free number at (800) 342) 342-3736.

We will be happy to discuss with you any concerns 1854 Monroe Avenue H.D.F.C. may have about the coverage issues raised in this letter. If you have any questions or concerns, you can reach me at (610) 747-1046.

Sincerely,
UNITED NATIONAL SPECIALTY INSURANCE COMPANY


Stanley Doniger
Claims Examiner

/SD

Page 5

cc:     Morstan General Agency
        P O Box 4500
        Manhasset, NY 11030-4500

        Murphy & Jordan
        32 Old I Slip 8th Floor
        New York, NY 10006

        Michael C. Beatty, Esq.
        Feldman, Kronfeld & Beatty
        42 Broadway 19th Floor
        New York, NY 10004

**EXHIBIT K**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

UNITED   NATIONAL   SPECIALTY   INSURANCE          CIV:
COMPANY,

                          Plaintiff,          **COMPLAINT**

              -against-

1854  MONROE  AVENUE  H.D.F.C.  and  EULALIA
BALAGUER,

                     Defendants.

-----------------------------------------------------------------------x

Plaintiff, UNITED NATIONAL SPECIALTY INSURANCE COMPANY ("UNITED

NATIONAL"), by its attorneys, MIRANDA SOKOLOFF SAMBURSKY SLONE

VERVENIOTIS LLP, complaining of the defendants, alleges, upon information and belief, as

follows:

**THE PARTIES**

1. At all times hereinafter mentioned, plaintiff was and still is a corporation duly
   incorporated in the State of Wisconsin under the laws of Wisconsin conducting and
   licensed to do business in New York.

2. At all times hereinafter mentioned, plaintiff was authorized to issue policies of insurance
   in the State of New York.

3. Upon information and belief, at all times hereinafter mentioned, defendant 1854
   MONROE AVENUE H.D.F.C. ("MONROE") is a domestic corporation organized under
   and existing by virtue of the laws of the State of New York.

4. Upon information and belief, at all times hereinafter mentioned, defendant EULALIA BALAGUER was and still is a resident of 1854 Monroe Avenue, Bronx, New York 10457.

## JURISDICTION

5. This Court has subject matter jurisdiction due to diversity of citizenship and amounts in controversy in excess of $75,000, exclusive of interest and costs, pursuant to 28 U.S.C. Section 1332. Venue is proper in this district pursuant to 28 U.S.C. Section 1391 in that the claim arose in this district.

6. A controversy exists between the parties as to the coverage afforded under UNITED NATIONAL'S policy of insurance number L7180545, as well as the provisions of said policy.

7. Circumstances exist that justify the determination by the Court, pursuant to 28 U.S.C. Section 2201, of the rights and obligations of the plaintiff as to the provisions of the aforesaid policy of insurance, a determination that will be beneficial to both plaintiff and defendants.

8. Plaintiff has no adequate remedy at law.

## POLICY

9. UNITED NATIONAL issued a Commercial Lines General Liability Policy, policy number L7180545, to MONROE for the policy period May 5, 2006 to May 5, 2007, which affords coverage in accordance to its terms, provisions, and conditions (the "Policy").

## THE UNDERLYING ACTION

10. On or about May 30, 2007, a lawsuit was filed in the Supreme Court of the State of New York, Bronx County, entitled, Eulalia Balaguer v. 1854 Monroe Avenue Housing Development Fund Corporation, Index Number: 15713/07, seeking damages for alleged bodily injuries sustained by EULALIA BALAGUER, as a result of her fall on December 20, 2006 ("the Underlying Personal Injury Action").

11. It is alleged in the Underlying Personal Injury Action that on or about December 20, 2006, EULALIA BALAGUER, while lawfully at 1854 Monroe Avenue, Bronx, New York was caused to be precipitated and fall, causing her to sustain severe injuries.

12. UNITED NATIONAL has retained counsel to represent MONROE in the Underlying Personal Injury Action until an adjudication can be made regarding the rights and responsibilities of the parties under the subject insurance contract by this Court.

## AS AND FOR A FIRST CAUSE OF ACTION

13. Plaintiff repeats and realleges each and every allegation contained in the paragraphs of the complaint numbered 1 through 12 as if fully set forth at length herein.

14. The Policy provides in pertinent part as follows:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**2. Duties In The Event of Occurrence, Offense, Claim or Suit**

    a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    (1) How, when and where the "occurrence" or offense took place;

(2) The name and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.    If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

15. The accident took place on December 20, 2006.

16. That MONROE was aware of said accident at or about the time it occurred.

17. That notice was not provided to UNITED NATIONAL at that time, however.

18. MONROE'S broker, Murphy & Jordan, LLC, first gave notice, by a fax dated July 20, 2007 to Morstan General Agency, Inc.

19. Morstan General Agency, Inc. gave notice to UNITED NATIONAL on July 20, 2007, which was its first notice of this matter.

20. UNITED NATIONAL disclaimed coverage via a letter dated August 2, 2007.

21. The Policy condition requiring the forwarding of a notice of an occurrence or claim as soon as practicable was thus breached by MONROE, and EULALIA BALAGUER, and any other party seeking coverage under the Policy in connection with the Underlying Personal Injury Action.

22. By reason of the foregoing, UNITED NATIONAL is entitled to a declaration that it does not have a duty to defend MONROE, or EULALIA BALAGUER.

23. By reason of the foregoing, UNITED NATIONAL is entitled to a declaration that it does not have a duty to indemnify MONROE or EULALIA BALAGUER.

**WHEREFORE**, plaintiff, UNITED NATIONAL prays that judgment be made and entered herein:

(a) declaring that plaintiff is not obligated to defend and indemnify MONROE or EULALIA BALAGUER under UNITED NATIONAL's liability policy number L7180545, with respect to the claims in the underlying personal injury action; and

(b) granting to plaintiff such other and further relief as this court may deem just, proper, and equitable under the circumstances, together with the costs and disbursements of this action.

DATED:      Mineola, New York
            November 27, 2007

                            MIRANDA SOKOLOFF SAMBURSKY
                            SLONE VERVENIOTIS LLP
                            Attorneys for the Plaintiff
                            **UNITED NATIONAL SPECIALTY
                            INSURANCE        COMPANY**


                    By:_____
                            Michael A. Miranda
                            The Esposito Building
                            240 Mineola Boulevard
                            The Esposito Building
                            Mineola, New York 11501
                            (516) 741-7676
                            Our File No.: 07-544

**EXHIBIT L**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED NATIONAL SPECIALTY INSURANCE
COMPANY,

              Docket No.: 07-CV-10934
                (PKC) (THK)

        Plaintiff,

               **NOTICE OF MOTION FOR**
               **DEFAULT**

    -against-


1854 MONROE AVENUE H.D.F.C. and EULALIA
BALAGUER,


            Defendants.
-------------------------------------------------------------x

  **PLEASE TAKE NOTICE,** that upon the annexed Declaration of Adam I. Kleinberg,

dated March 10, 2008, and upon all prior pleadings and proceedings, the undersigned will move

this Court, before the Honorable P. Kevin Castel, on a date and time to be designated by the

Court, at the United States Courthouse for the Southern District of New York, located at 500

Pearl Street, New York, New York 10007, for an order granting plaintiff, UNITED NATIONAL

SPECIALTY INSURANCE COMPANY, a default judgment as against defendant 1854

MONROE AVENUE H.D.F.C., pursuant to Rule 55 of the Federal Rules of Civil Procedure,

declaring that UNITED NATIONAL SPECIALTY INSURANCE COMPANY is not obligated

to defend or indemnify defendant 1854 MONROE AVENUE H.D.F.C. in the action entitled

*Eulalia Balaguer v. 1854 Monroe Avenue Housing Development Fund Corporation,* Index

Number 15713/07, in the Supreme Court of the State of New York, Bronx County, on the

ground that defendant has failed to timely answer and/or otherwise move with respect to the

1

complaint in this action, and for such other and further relief as this Court deems just, equitable, and proper.

Dated: Mineola, New York
      March 17, 2008

                                   MIRANDA SOKOLOFF SAMBURSKY
                                   SLONE VERVENIOTIS LLP
                                   Attorneys for Plaintiff
                                   **UNITED NATIONAL SPECIALTY**
                                   **INSURANCE COMPANY**

                              By:_____
                                 Adam I. Kleinberg (AIK-0468)
                                 240 Mineola Boulevard
                                 The Esposito Building
                                 Mineola, New York 11501
                                 (516) 741-7676
                                 Our File No.: 07-544

TO:    1854 Monroe Avenue H.D.F.C.
        c/o Monica Acevedo
        Non-Appearing Defendant
        1854 Monroe Avenue
        Bronx, New York 10457

        Michael C. Beatty
        FELDMAN, KRONFELD & BEATTY
        Attorneys for the Defendant Eulalia Balaguer
        42 Broadway, 19th Floor
        New York, NY 10004
        212-425-0230

*prompt*
*" Replies /opposition*
*and supporting papers"*
*as a "declaration"*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED NATIONAL SPECIALTY INSURANCE
COMPANY,

                                  Plaintiff,

                -against-

1854 MONROE AVENUE H.D.F.C. and EULALIA
BALAGUER,

                                  Defendants.
-------------------------------------------------------------x

Docket No.: 07-CV-10934
(PKC)

**DECLARATION IN
SUPPORT OF DEFAULT
MOTION**

**ADAM I. KLEINBERG**, an attorney duly admitted to practice law before this Court and

aware of the penalties of perjury, declares the following:

1.      I am a member of the Bar of this Court and am a partner with the firm of

MIRANDA SOKOLOFF SAMBURSKY SLONE VERVENIOTIS LLP, attorneys for plaintiff

in the above-entitled action, and I am familiar with all the facts and circumstances in this action.

2.      I make this declaration pursuant to Fed. R. Civ. Pro. 55 and Local Rules 55.1 and

55.2 for the Southern District of New York, in support of the plaintiff's application for the entry

of a default judgment against defendant 1854 MONROE AVENUE H.D.F.C.

3.      Plaintiff, UNITED NATIONAL SPECIALTY INSURANCE COMPANY

(hereinafter "UNITED NATIONAL"), commenced this action seeking a declaration that it has

no duty to defend or indemnify defendant 1854 Monroe Avenue H.D.F.C. with respect to claims

asserted in the underlying action entitled *Eulalia Balaguer v. 1854 Monroe Avenue Housing

Development Fund Corporation,* Index Number 15713/07, in the Supreme Court of the State of

New York, Bronx County (the "underlying action"). A copy of the Summons and Complaint in

this action are attached as Exhibit A.

4.    Jurisdiction of the subject matter of this action is afforded under 28 U.S.C. §1332 and is based on diversity of citizenship and an amount in controversy in excess of $75,000, exclusive of interest and costs.  In this regard, plaintiff is a Wisconsin corporation and defendant 1854 Monroe Avenue H.D.F.C. is a New York corporation, and defendant Eulalia Balaguer is a New York resident.

5.    This Court has personal jurisdiction over defendant 1854 Monroe Avenue H.D.F.C. by virtue of it being a New York corporation and because it was served within the State of New York through its registered agent.

6.    None of the defendants in this case is an infant or incompetent.

7.    United National commenced this action by the filing of the Summons and Complaint on November 30, 2007.  See Exhibit A.

8.    A copy of the Summons and Complaint was served on defendant 1854 Monroe Avenue H.D.F.C. on December 15, 2007.  A copy of the Affidavit of Service is attached as Exhibit B.

9.    Defendant 1854 Monroe Avenue H.D.F.C has not answered or otherwise moved with respect to the Complaint and the time for the defendant to do so has now expired.

10.    An original copy of a Certificate of Default signed by the Clerk of the Court is attached as Exhibit C.

11.    Accordingly, it is respectfully submitted that plaintiff UNITED NATIONAL SPECIALTY INSURANCE COMPANY is entitled to a default judgment against non-answering defendant 1854 Monroe Avenue H.D.F.C.

12.    **WHEREFORE,** plaintiff UNITED NATIONAL SPECIALTY INSURANCE COMPANY respectfully requests that this Court enter an order and judgment declaring that

plaintiff is not obligated to defend or indemnify defendant 1854 Monroe Avenue H.D.F.C in the

Underlying Action, together with such other and further relief as this court deems just, equitable

and proper.

Dated: Mineola, New York
        March 10, 2008

_____
ADAM I. KLEINBERG (AIK-0468)

3

Exhibit A

JUDGE CASTEL

%AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern _____ District of _____ New York

UNITED NATIONAL SPECIALTY INSURANCE
COMPANY

V.

**SUMMONS IN A CIVIL ACTION**

1854 MONROE AVENUE H.D.F.C. and EULALIA
BALAGUER

CASE NUMBER:

TO: (Name and address of Defendant)

1854 Monroe Avenue H.D.F.C.
c/o Monica Acevedo
1854 Monroe Avenue
Bronx, New York  10457

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

MIRANDA SOKOLOFF SAMBURSKY SLONE VERVENIOTIS LLP
Attn:  Steven Verveniotis
240 Mineola Boulevard
Mineola, New York  11501

an answer to the complaint which is served on you with this summons, within _____ thirty (30) _____ days after service
of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON                    NOV 3 0 2007

_____       _____
CLERK                                   DATE

_____
(By) DEPUTY CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
UNITED NATIONAL SPECIALTY INSURANCE      CIV:
COMPANY,

                       Plaintiff,      **COMPLAINT**

              -against-

1854 MONROE AVENUE H.D.F.C. and EULALIA
BALAGUER,

                   Defendants.
------------------------------------------------------------------------x

     Plaintiff, UNITED NATIONAL SPECIALTY INSURANCE COMPANY ("UNITED NATIONAL"), by its attorneys, MIRANDA SOKOLOFF SAMBURSKY SLONE VERVENIOTIS LLP, complaining of the defendants, alleges, upon information and belief, as follows:

**THE PARTIES**

1. At all times hereinafter mentioned, plaintiff was and still is a corporation duly incorporated in the State of Wisconsin under the laws of Wisconsin conducting and licensed to do business in New York.

2. At all times hereinafter mentioned, plaintiff was authorized to issue policies of insurance in the State of New York.

3. Upon information and belief, at all times hereinafter mentioned, defendant 1854 MONROE AVENUE H.D.F.C. ("MONROE") is a domestic corporation organized under and existing by virtue of the laws of the State of New York.

4. Upon information and belief, at all times hereinafter mentioned, defendant EULALIA BALAGUER was and still is a resident of 1854 Monroe Avenue, Bronx, New York 10457.

## JURISDICTION

5. This Court has subject matter jurisdiction due to diversity of citizenship and amounts in controversy in excess of $75,000, exclusive of interest and costs, pursuant to 28 U.S.C. Section 1332. Venue is proper in this district pursuant to 28 U.S.C. Section 1391 in that the claim arose in this district.

6. A controversy exists between the parties as to the coverage afforded under UNITED NATIONAL'S policy of insurance number L7180545, as well as the provisions of said policy.

7. Circumstances exist that justify the determination by the Court, pursuant to 28 U.S.C. Section 2201, of the rights and obligations of the plaintiff as to the provisions of the aforesaid policy of insurance, a determination that will be beneficial to both plaintiff and defendants.

8. Plaintiff has no adequate remedy at law.

## POLICY

9. UNITED NATIONAL issued a Commercial Lines General Liability Policy, policy number L7180545, to MONROE for the policy period May 5, 2006 to May 5, 2007, which affords coverage in accordance to its terms, provisions, and conditions (the "Policy").

## THE UNDERLYING ACTION

10. On or about May 30, 2007, a lawsuit was filed in the Supreme Court of the State of New York, Bronx County, entitled, <u>Eulalia Balaguer v. 1854 Monroe Avenue Housing Development Fund Corporation</u>, Index Number: 15713/07, seeking damages for alleged bodily injuries sustained by EULALIA BALAGUER, as a result of her fall on December 20, 2006 ("the Underlying Personal Injury Action").

11. It is alleged in the Underlying Personal Injury Action that on or about December 20, 2006, EULALIA BALAGUER, while lawfully at 1854 Monroe Avenue, Bronx, New York was caused to be precipitated and fall, causing her to sustain severe injuries.

12. UNITED NATIONAL has retained counsel to represent MONROE in the Underlying Personal Injury Action until an adjudication can be made regarding the rights and responsibilities of the parties under the subject insurance contract by this Court.

## AS AND FOR A FIRST CAUSE OF ACTION

13. Plaintiff repeats and realleges each and every allegation contained in the paragraphs of the complaint numbered 1 through 12 as if fully set forth at length herein.

14. The Policy provides in pertinent part as follows:

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 2. Duties In The Event of Occurrence, Offense, Claim or Suit

    a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

    (1) How, when and where the "occurrence" or offense took place;

(2) The name and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.      If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

15. The accident took place on December 20, 2006.

16. That MONROE was aware of said accident at or about the time it occurred.

17. That notice was not provided to UNITED NATIONAL at that time, however.

18. MONROE'S broker, Murphy & Jordan, LLC, first gave notice, by a fax dated July 20, 2007 to Morstan General Agency, Inc.

19. Morstan General Agency, Inc. gave notice to UNITED NATIONAL on July 20, 2007, which was its first notice of this matter.

20. UNITED NATIONAL disclaimed coverage via a letter dated August 2, 2007.

21. The Policy condition requiring the forwarding of a notice of an occurrence or claim as soon as practicable was thus breached by MONROE, and EULALIA BALAGUER, and any other party seeking coverage under the Policy in connection with the Underlying Personal Injury Action.

22. By reason of the foregoing, UNITED NATIONAL is entitled to a declaration that it does not have a duty to defend MONROE, or EULALIA BALAGUER.

23. By reason of the foregoing, UNITED NATIONAL is entitled to a declaration that it does not have a duty to indemnify MONROE or EULALIA BALAGUER.

**WHEREFORE**, plaintiff, UNITED NATIONAL prays that judgment be made and entered herein:

(a) declaring that plaintiff is not obligated to defend and indemnify MONROE or EULALIA BALAGUER under UNITED NATIONAL's liability policy number L7180545, with respect to the claims in the underlying personal injury action; and

(b) granting to plaintiff such other and further relief as this court may deem just, proper, and equitable under the circumstances, together with the costs and disbursements of this action.

DATED:     Mineola, New York
           November 27, 2007

                            MIRANDA SOKOLOFF SAMBURSKY
                            SLONE VERVENIOTIS LLP
                            Attorneys for the Plaintiff
                            **UNITED NATIONAL SPECIALTY**
                            **INSURANCE     COMPANY**

                    By:_____
                            Michael A. Miranda
                            The Esposito Building
                            240 Mineola Boulevard
                            The Esposito Building
                            Mineola, New York 11501
                            (516) 741-7676
                            Our File No.: 07-544

**Exhibit B**

DISTRICT COURT OF THE STATE OF NEW YORK
COUNTY OF SOUTHERN

*Maverick Process 516-693-1100*

UNITED NATIONAL SPECIALTY INSURANCE COMPANY,

- against -

1854 MONROE AVENUE H.D.F.C. AND EULALIA BALAGUER,

|  |  |
|---|---|
| Petitioner(s) | ATTORNEY  SOKOLOFF  20034 |
| Plaintiff(s) | RETURN DATE |
|  | INDEX NO  07 CV 10934 |
|  | INDEX DATE  11/30/2007 |
| Defendant(s) | CALENDAR NO |
|  | 3rd PARTY INDEX# |
| Respondent(s) | HON. JUDGE CASTEL |

STATE OF NEW YORK:  COUNTY OF NASSAU                    SS:          **AFFIDAVIT OF SERVICE**

THE UNDERSIGNED DEPONENT BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION AND IS OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on 12/15/2007    at 11:05 AM    at 1854 MONROE AVENUE APT 2E, BRONX, NY 10457

deponent served the within  SUMMONS IN A CIVIL ACTION & COMPLAINT                                    **upon**

1854 MONROE AVENUE H.G.F.C. C/O MONICA ACEVEDO

☑ *Said Documents Were Properly Endorsed with the Index Number and Date of Filing thereon*

witness/defendant/respondent (hereafter called the recipient) therein named.

**A. Individual**  By Personally delivering to and leaving with said individual, and that he knew the person so served and described as recipient there
☐

**B. Corp/**  ☑  By delivering to and leaving with    MONICA ACEVEDO                    and that he knew the person
**Prtnshp**  so served and authorized to accept service to ☐ an officer ☐ Director ☑ managing agent or general agen ☐ cashier ☐ AsstCashier
☐  ☐ Agent authorized by appointment or by law to receive service.

**C. Suitable**  By delivering thereat a true copy of each to                                  a person of suitable age and discretion.
**Age Person**  Said premises is recipient's  ☐ actual place of business  ☐ dwelling place  ☐ usual place of abode within the state
☐

**D. Affixing**  By affixing a true copy of each to the door of said premises, which is recipient's ☐ actual place of business ☐ dwelling place
**to Door, Etc.**  ☐ usual place of abode within the state.    Deponent was unable, with due diligence to find recipient or a person of suitable age
☐  discretion, thereat, having called there

                    @                        @                    ,                @

Deponent talked to                            who stated that recipient  ☐ lived  ☐ worked there.

**E. Mailing**  On                        Deponent completed said service under the last two sections by mailing a copy of
**W/B,C or**  the above named process by First Class Mail addressed to the witness/defendant/respondent to the above address of service which
☐  is recipient's ☐ last known residence  ☐ last known place of business  (with additional endorsement of Personal and Confidential
on face of envelope.)
☐ RPAPL 735 An additional mailing by Certified Mail was made to the respondent at the premise sought to be recovered.

**F. DRL**  The required notice was legibly printed on the face of the summons. I identified the defendant by photograph annexed hereto
**Sec232**  which was provided by the plaintiff.
☐

**G.**  | SEX | SKIN COLOR | HAIR COLOR | AGE (approx.) | HEIGHT (approx.) | WEIGHT (approx.) |
|---|---|---|---|---|---|
**Description**  | F | LT BROWN | BLACK | 35 | 5'0" | 140 |
☑  OTHER

**Sec.8001Fee**  A fee of   $0.00   , pursuant to CPLR Section 8001, was tendered to the witness.
☐

**Military**  I asked the person spoken to whether the defendant/respondent was in active military service of the United States or of the
☐  State of New York in any capacity whatever and received a negative repy. Defendant/Respondent wore ordinary civilian
clothers and no military uniform. The source of my information and the grounds of my belief are the conversations and
observations above narrated. Upon information and belief I aver that the defendant/respondent is not in the military service of
New York State or of the United States as the term is defined in either the State or in the Federal statutes.

Sworn Before me this day  17 of

DECEMBER          2007

_____
(NOTARY PUBLIC)

DONNA L. ODRISCOLL
NOTARY PUBLIC, State of New York
No. 01OD6126123
Qualified in Nassau County
Commission Expires on 4/25/2009

_____
DAVID A SMITH #0912050

**Exhibit C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
UNITED NATIONAL SPECIALTY INSURANCE
COMPANY,

                            Plaintiff,

              -against-

1854 MONROE AVENUE H.D.F.C. and EULALIA
BALAGUER,

                        Defendants.
-----------------------------------------------------------------x

Docket No.: 07-CV-10934
(PKC)

**CERTIFICATE OF DEFAULT**

     I, J. Michael McMahon, Clerk of the Court of the United States District Court for the Southern District of New York, do hereby certify that a review of the docket entries in the above-entitled action indicates that the defendant 1854 Monroe Avenue H.D.F.C was served through the Secretary of State with the Summons and Complaint in the above-entitled action on December 15, 2007 and that proof of such service thereof was filed on January 30, 2008; and

     I further certify that the docket entries indicate that defendant 1854 Monroe Avenue H.D.F.C has not filed an answer or otherwise moved with respect to the complaint herein.

     The default of the defendant 1854 Monroe Avenue H.D.F.C is hereby noted.

Dated: New York, NY
     3 | 7   , 2008

                            J. Michael McMahon
                            Clerk of the Court

                            By:_____
                               Deputy Clerk

1

**EXHIBIT M**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
UNITED NATIONAL SPECIALTY INSURANCE
COMPANY,

> USDS SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 4/8/08

                        Plaintiff,

Docket No.: 07-CV-10934
(PKC)

          -against-

**DEFAULT JUDGMENT**

1854 MONROE AVENUE H.D.F.C. and EULALIA
BALAGUER,

                        Defendants.
---------------------------------------------------------------x

      This action having been commenced on November 30, 2007, by the filing of the

Summons and Complaint, and a copy of the Summons and Complaint having been served on

defendant 1854 Monroe Avenue H.D.F.C on December 15, 2007, and proof of service having

been filed on January 30, 2008, the defendant not having answered the Complaint, and the time

for answering the Complaint having expired, it is

      ORDERED, ADJUDGED AND DECREED: that the plaintiff, United National Specialty

Insurance Company, is not obligated to defend or indemnify defendant 1854 Monroe Avenue

H.D.F.C. in the action entitled *Eulalia Balaguer v. 1854 Monroe Avenue Housing Development

Fund Corporation*, under Index Number 15713/07, in the Supreme Court of the State of New

York, Bronx County.

Dated: New York, NY.
        4-8     , 2008

                                                            U.S.D.J.

                        This document was entered on the docket on

                        _____.

1

**EXHIBIT N**

# McDERMOTT & McDERMOTT
### Attorneys and Counselors at Law

286 Madison Avenue
14ᵗʰ Floor
New York, New York 10017

Mill Pond Offices
293 Route 100
Suite 210
Somers, New York 10589

Tel: 212-557-3000
Fax: 212-557-5051

Tel: 914-276-2747
Fax: 914-276-7608

## MEMO ENDORSED

Please respond to Somers address

June 9, 2008

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-10-08

District Judge P. Kevin Castel
United Stated Courthouse
500 Pearl Street
New York, New York 10007

Re:  United National Specialty Insurance Company v. 1854 Monroe Avenue HDFC
and Eulalia Balaguer
Docket No.: 07- Civ. 10934 (PKC)(THK)

Dear Judge Castel:

This firm represents 1854 Monroe Avenue HDFC ("1854") in the above action. In the instant action United National Specialty Insurance Company ("United") seeks a judgment of this Court, inter alia, that United is not obligated to defend 1854 in the personal injury claim maintained by Eulalia Balaguer

In a letter to the Court dated June 6, 2008, 1854 requested a stay of the proceedings since this firm had recently been retained. United opposed the request in a letter dated June 6, 2008 from Steven Verveniotis, attorney for United.

Specifically, 1854 is seeking a stay of the proceedings in this action for thirty (30) days, including the motion for summary judgment, which is pending in this Court. The purpose of the stay would be to afford 1854 sufficient time to prepare a motion of vacatur pursuant to FRCP Rule 55(c), setting aside the default judgment which had been previously granted to United. 1854 would also move pursuant to FRCP Rule 60(b) to vacate the default judgment based on the inaccuracy of the information submitted to this Court in United's motion for a default judgment. 1854 would also seek leave of the Court to file an answer to the Complaint pursuant to FRCP Rule 12.

In support of the instant application for a stay, 1854 relies upon the documented inaccuracies in the motion for a default judgment. In support of the application for a default judgment against 1854 United submitted a declaration in the form of an affirmation from an attorney, Adam I. Kleinberg. United did not submit an affidavit from a representative from

District Judge P. Kevin Castel
United Stated Courthouse
June 9, 2008
Page 2

United, but relied upon the unverified Complaint for the substantive claim for relief sought in the Complaint. In paragraph 20 of the Complaint United claims that it disclaimed coverage via a letter dated August 2, 2008. However, in paragraph 11 of the affidavit of Mark Smith, United's Senior Claims Examiner, submitted in support of the motion for summary judgment, United stated that the August 2, 2007 was only a warning letter. In paragraph 20, Smith stated that the purported disclaimer was not mailed to 1854 until August 21, 2007.

The difference between the August 2, 2007 versus August 21, 2007 mailing date, would be to make United's instant action untimely since United unreasonably delayed in sending a disclaimer to 1854. Sirius America Insurance. Co. v. Vigo Construction, 48 A.D.3d 450 (2ᵈ Dept. 2008); (The insurer relied upon a disclaimer that was sent 34 days after it knew or should have known of the basis for denying coverage. The appellate court found that since there was no explanation for that delay, pursuant to Insurance Law § 3420(d), it was unreasonable as a matter of law and ineffective. Therefore, the insurer was obligated to defend the contractor in the underlying action. Consequently, the trial court erred in denying the underlying plaintiff's motion for summary judgment); First Financial Ins. Co v. Jetco Contracting Corp, 1 N.Y.3d 64 (2003) (Answering the certified questions, the court held that the insurer's delay of 48 days in notifying the policyholder of disclaimer was unreasonable as a matter of law where the purpose of delay was to investigate other sources of insurance.)

Indeed, in the instant matter, 1854 would challenge the purported disclaimer. 1854 submits that not granting the request for a stay to submit a motion to vacate the default judgment would allow United to escape a contractual obligation based on a technical ruling. The chain reaction of a procedural, technical victory by United against 1854 is against all public policy considerations.

FRCP Rule 60(b)(3) permits vacatur if there is fraud, misrepresentation or other misconduct by an adverse party. The "fraud, misrepresentation or other misconduct" in this case is based, in part, on the fact that it is proven by United's own admission that the factual allegations set forth in the Complaint were untrue.

The law relating to vacatur of a default judgment is well-known. "Defaults, often referred to as 'the weapon of last resort', are disfavored, especially when the case presents issues of fact. In Re Martin-Trigona, 763 F.2d 503 (2d Cir. 1985). A court should resolve all doubts in favor of determination on the merits. Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). Accordingly, courts should liberally grant motions to vacate default judgments so that a trial on the merits may be had and justice be done. Triad Energy Corp. v. McNell, 110 F.R.D 382 (S.D.N.Y. 1986)." Adidas Sportschuhfabriken Adi Dassler Stiftung & Co., 1990 U.S. Dist. LEXIS 3953 (S.D.N.Y. 1990)

District Judge P. Kevin Castel
United Stated Courthouse
June 9, 2008
Page 3

     1854 submits that in its motion to vacate the default judgment it will satisfy the requirements: "that its default was not willful, that it has a meritorious defense and that vacating the default will not result in unfair prejudice to plaintiff." Schroeder v. Indorsky, Comm. Fut. L. Rep., 1991 U.S. Dist. LEXIS 11186 (S.D.N.Y. 1991)

     Accordingly, we are requesting that the proceedings be stayed for thirty (30) days so that 1854 may prepare and file the motion to vacate the default and leave to file the answer to the Complaint. Thank you for the Court's attention to this matter.

               Respectfully,

               Michael J. McDermott

MJM:az
Cc:

Steven Verveniotis, Esq.
Miranda, Sokoloff, Sambursky, Slone, Verveniotis, LLP
Attorneys for United National Specialty Insurance Company
240 Mineola Blvd
Mineola, New York 11501

Michael Beatty, Esq.
Feldman, Kronfeld & Beatty
Attorneys for Eulalia Balaguer
42 Broadway, 19th Floor
New York, New York 10004

Ms. Martha Gutierrez, President
1854 Monroe Avenue HDFC
850 Bronx River Road
Yonkers, New York 10708

*[Handwritten note:]* Premotion conference is waived to permit 1854 Monroe Avenue HDFC to move to vacate judgment against it. Have considered the issue of the stay of proceeding is warranted.

SO ORDERED

*[signature]* USDJ
6-9-08

**AFFIDAVIT OF SERVICE BY MAIL**

STATE OF NEW YORK   )
                           ) ss.:

COUNTY OF NASSAU    )

       Leila Krim**,** being duly sworn, deposes and says that deponent is not a party to the action,

is over 18 years of age and resides in Long Beach, New York.

       That on August 6, 2008, deponent served the within **DECLARATION IN**

**OPPOSITION TO MOTION TO VACATE DEFAULT** upon:

Michael C. Beatty
FELDMAN, KRONFELD & BEATTY
Attorneys for the Defendant
Eulalia Balaguer
42 Broadway, 19th Floor
New York, NY 10004

Michael J. Mcdermott, Esq.
MCDERMOTT & MCDERMOTT
Attorneys for Defendant
1854 Monroe Avenue H.D.F.C.
293 Route 100, Suite 210
Somers, New York  10589
(914) 276-2747

the addresses designated by said attorney(s) for that purpose by depositing a true copy of same

enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive

care and custody of the United States Post Office Department within the State of New York.

                                                       Leila Krim

Sworn to before me this 6th
day of August 2008.

NOTARY PUBLIC

Melissa L. Holtzer
Notary Public, State of New York
No. 02HO6171185
Qualified in Nassau County
Commission Expires 7/23/2011