```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED NATIONAL SPECIALTY INSURANCE     :
COMPANY,                                :
                     Plaintiff,         :    07 Civ. 10934 (KTD)
                                        :
           -against-                    :    MEMORANDUM OPINION
                                        :         AND ORDER
                                        :
1854 MONROE AVENUE H.D.F.C. and         :
EULALIA BALAGUER,                       :
                                        :
                     Defendants.        :
----------------------------------------X
```

KEVIN THOMAS DUFFY, U.S.D.J.:

United National Specialty Insurance Company ("Plaintiff" or "United National") filed this diversity action seeking a declaratory judgment that it is not obligated to defend or indemnify its insured, 1854 Monroe Avenue H.D.F.C. ("1854 Monroe" or the "Insured"), against claims brought by Eulalia Balaguer, the injured party, (collectively, "Defendants") in an underlying personal injury case in New York Supreme Court. United National maintains that it properly and timely disclaimed liability due to 1854 Monroe's failure to provide timely notice of Balaguer's fall as required under the relevant policy.

Defendants contend that: (1) United National's disclaimer was untimely and, therefore, ineffective; (2) United National's reason for its delay in issuing a disclaimer is invalid; and (3) 1854 Monroe's own delay in notifying United National did not violate the relevant notice provision of its insurance policy.

In its amended answer, the Insured filed a counterclaim for attorneys' fees and the costs and disbursements it incurred defending this case.   Balaguer filed an amended answer and counterclaim alleging fraudulent denial of coverage.   She seeks actual damages, punitive damages, attorneys' fees, costs and disbursements, and a declaration that United National has a duty to provide coverage in her underlying personal injury action.   I heard testimony at a one-day bench trial on May 12, 2010, and received evidence, including exhibits and deposition testimony. After careful consideration of the same, the following are my findings of fact and conclusions of law.

## I.  FACTS[1]

On  May  5,  2006,  United  National  issued  a  one-year commercial general liability policy, number L718054, to 1854 Monroe covering the premises through May 5, 2007 (the "Policy"). This case concerns the provision of the Policy that addresses the Insured's duties to provide notice to United National under certain circumstances.   The Policy provides in relevant part:

> 2.  Duties  In  The  Event  Of  Occurrence, Offense, Claim Or Suit.
>
>> a.  You  must  see  to  it  that  we  are notified  as  soon  as  practicable  of  an "occurrence"  or  an  offense  which  may

---

[1] The factual findings presented herein derive from my careful review of the parties' pleadings in this case as well as of the affidavits, declarations, testimony, pretrial submissions, and extensive exhibits submitted for this bench trial.  Except where specifically referenced, no further citation to the sources will be made.

2

result in a claim.    To the extent
possible, notice should include:

> (1)   How, when and where the
> "occurrence" of offense took
> place;
>
> (2) The names and addresses of any
> injured persons and witnesses; and
>
> (3) The nature and location of any
> injury or damage arising out of
> the "occurrence" or offense.

b.  If a claim is made or "suit" is
brought against any insured, you must:

> (1)   Immediately record the
> specifics of the claim or "suit"
> and the date received; and
>
> (2)   Notify us as soon as
> practicable.
> You must see to it that we receive
> written notice of the claim or
> "suit" as soon as practicable.

(Exh. 2 at 7.)

On December 20, 2006, Eulalia Balaguer fell and broke her
femur when her slipper stuck to glue on her kitchen floor.
Balaguer's kitchen floor was covered in glue because Modesto
Ortega ("M. Ortega") and his son, Yeckson Ortega ("Y. Ortega"),
were replacing the floor tiles in Balaguer's bathroom and
kitchen.   Monica Acevedo and Beatriz Echavarria[2], Treasurer and
President of the 1854 Monroe Board of Directors respectively,

---

[2] Beatriz Echavarria's name is alternately spelled "Echevarria" in Defendants'
Proposed Joint Pretrial Order, in United National's pretrial papers, and in
other documents submitted by the parties. However, in her sworn deposition
it is spelled "Echavarria," so I will use that spelling.

3

had hired M. Ortega, Echavarria's brother, and Y. Ortega to perform maintenance work on behalf of 1854 Monroe.   Y. Ortega and Balaguer's nephew, Victor Ortiz, both saw Balaguer fall.

When Balaguer fell, the severity of her injury was apparent.   Ortiz called 9-1-1, and an ambulance came within about ten minutes.   M. Ortega, Y. Ortega, and Ortiz all witnessed Balaguer, wailing in pain, receive emergency medical care and leave the building in an ambulance.

Balaguer was in the hospital from December 20, 2006, to January 10, 2007.   No one from 1854 Monroe management visited her there.   However, Acevedo had learned of Balaguer's injury on December 22 or 23, 2006, just two or three days after it occurred, when M. Ortega informed her that emergency medical personnel had taken Balaguer away in an ambulance.   Upon learning of Balaguer's fall, Acevedo did not conduct an investigation, fill out an accident report, or communicate anything to Echavarria.   In fact, 1854 Monroe had no written procedures for reporting incidents involving injuries on the premises.   It was not until Acevedo received the summons and complaint in Belaguer's state court case in July 2007 that she finally reported Balaguer's injury to 1854 Monroe's insurance broker.   She did not contact United National at all.

Echavarria first learned of Balaguer's fall and resulting injury when she saw Balaguer walking with a cane only a few days

4

after Balaguer returned from the hospital in January 2007. Nonetheless, Echavarria failed to notify United National until on or about July 20, 2007, when she sent United National an ACORD Notice of Occurrence/Claim (the "Notice of Claim"). This was about three weeks after 1854 Monroe had been served in Balaguer's state court action.

The claim was assigned to United National senior claims examiner Stanley Doniger. On July 25, 2007, Doniger hired Allen Braaten to investigate Balaguer's claim. Doniger knew that under New York law he had only thirty days from the time that he became aware of a reason to deny coverage to do so. Doniger noticed that the incident underlying Balaguer's claim had occurred seven months earlier, which raised a red flag about a potential late-notice issue. Consequently, Doniger called Acevedo, the United National contact person at 1854 Monroe, to ascertain whether she, or anyone in 1854 Monroe's management, had knowledge of Balaguer's fall prior to the filing of the state court action. He left her a voicemail and called back the next day, July 26, 2007, when his call was not returned. On July 26, Acevedo's son told Doniger that Acevedo was out of the country. At that point, beyond speculation, Doniger could not determine who knew what and when.

Meanwhile, on July 25, 2007, Doniger also called and spoke with Michael Beatty, Esq., Balaguer's attorney. Beatty told

5

Doniger that someone named "Bruno," perhaps the superintendent at 1854 Monroe, might have been in Balaguer's apartment at the time of her fall.   Doniger passed this information to Braaten who pursued the lead to no end.

Failing to get any information from his attempt to investigate, Doniger issued a reservation of rights letter ("RoR letter") addressed to Acevedo at 1854 Monroe on August 2, 2007. The RoR letter informed Acevedo that 1854 Monroe was not cooperating with United National's investigation of Balaguer's incident.   It further provided that United National would deny coverage if 1854 Monroe failed to cooperate within ten business days.

On August 3, 2007, Braaten prepared his initial report on the 1854 Monroe investigation.   Braaten's report informed Doniger that Bruno was living in the basement apartment. Braaten had left messages for Bruno, but Bruno had not responded.   No information in Braaten's initial report was helpful in determining when the management of 1854 Monroe first knew about Balaguer's fall.   Braaten made several other calls and at least one other visit to 1854 Monroe subsequent to his August 3 report.

On August 20, 2007, Braaten submitted his second and final report on his investigation of 1854 Monroe.   It was not useful in determining when 1854 Monroe knew of Balaguer's fall.   That

same day, after Acevedo returned from having been out of the country for a month and Doniger returned from a week's vacation, Doniger received a voicemail from 1854 Monroe president Echavarria.   Doniger could not understand the message due to language difficulties.   Within two hours, Doniger was able to find a Spanish-speaking colleague, Diane Cruz, who could help him.   Cruz spoke with Echavarria on the phone.   During their conversation, Echavarria told Cruz that the 1854 Monroe Board of Directors hired her brother, M. Ortega, to complete repairs in Balaguer's apartment in December 2006.   Echavarria also told Cruz that she had learned of Balaguer's fall only a few days after Balaguer returned from the hospital in January 2007.

Doniger issued a disclaimer letter on August 21, 2007, the day after he had proof that Echavarria knew about Balaguer's fall and injuries in January 2007.   In the letter, sent to 1854 Monroe and copied to Balaguer, United National disclaimed coverage due to 1854 Monroe's failure to timely notify United National of Balaguer's fall.   On or about November 30, 2007, United National filed this suit for declaratory judgment.

## II.   DISCUSSION AND CONCLUSIONS OF LAW

### A.   Jurisdiction

Subject matter jurisdiction in this case is based on diversity of citizenship.   See 28 U.S.C. § 1332.   Consequently, I will apply New York law to the substantive issues in dispute

7

in this case.   See Snyder v. Nat'l Union Fire Ins., 688 F. Supp.
932, 934-35 (S.D.N.Y. 1988) (concluding based on choice of law
principles that New York law applied in a diversity case to
construe an insurance policy when the site of the risk was in
New York, and New York had an interest in the outcome of the
case).

### B.   Untimely Notice by Insured

In deciding the issues presented by this case, I address
Defendants' third argument first.   1854 Monroe argues that it
did not violate the Policy's notice provision by failing to
notify United National of Balaguer's fall within a reasonable
time, even though Acevedo and Echavarria knew about Balaguer's
fall soon after it occurred, because they did not have the
subjective belief that Balaguer would file a claim against 1854
Monroe until they were served with her summons and complaint in
July 2007.    Defendants argue that: (1) the language of the
Policy's notice provision calls for a subjective evaluation by
the insured of when an occurrence may result in a claim; and (2)
the insured's subjective opinion that a claim may result is the
operative trigger of the insured's obligation to report an
occurrence to United National.   (Defs.' Mem. at 13.)   1854
Monroe  further  argues  that  because  the  Policy  creates  a
subjective standard, rather than an absolute standard, of when
notice is required, the language of the Policy is ambiguous and

8

ought to be construed against United National.  (Id.); see Int'l

Multifoods Corp. v. Commercial Union Ins. Co., 309 F.3d 76, 88

n.7 (2d Cir. 2002).

1854 Monroe misapplies the standard applicable to trigger

an insured's notice obligation.  1854 Monroe cites the proper,

objective standard that New York courts apply to determine when

an insured's notice obligation begins.  (Defs.' Mem. at 16.)

But, 1854 Monroe turns the standard on its head when it argues

that it had no duty to notify United National of Balaguer's fall

because it subjectively believed in good faith that Balaguer

would not file a claim until she in fact did.

The Policy provides in relevant part that 1854 Monroe must

make  sure  that  United  National  is  "notified  as  soon  as

practicable of an 'occurrence' or an offense which may result in

a claim."  (Exh. 2 at 7.)  "Under New York [l]aw, compliance

with a notice-of-occurrence or notice-of-claim provision in an

insurance  contract  is  a  condition  precedent  to  an  insurer's

liability  under  the  policy."   U.S.  Underwriters  Ins.  Co.  v.

Congregation B'Nai Israel, 900 F. Supp. 641, 646 (E.D.N.Y.

1995); accord Am. Ins. Co. v. Fairchild Indus., Inc., 56 F.3d

435, 438 (2d Cir. 1995).[3]  Further, it is well established that

---

[3] New York Insurance Law § 3420 was recently amended to require that an
insurer suffer prejudice from an insured's late notice in order to disclaim
on untimely notice grounds, but the amendment applies to policies and
incidents occurring after January 17, 2009, well after all the relevant
occurred in this case.

New York courts apply an objective test to determine whether a particular occurrence triggers an insured's notice obligation under a policy like the one at issue in this case. See Congregation B'Nai Israel, 900 F. Supp. at 646 (applying an objective standard); Tower Ins. Co. of N.Y. v. Lin Hsin Long Co., 855 N.Y.S.2d 75, 78 (N.Y. App. 2008) (same). Under New York law, the insured's duty to provide notice is triggered when "the circumstances known to the insured . . . would have suggested to a reasonable person the possibility of a claim." Congregation B'Nai Israel, 900 F. Supp. at 646. Once the insured's obligation is triggered, New York law defines "as soon as practicable," to mean that the required notice must be given within a "reasonable period of time." Great Canal Realty Corp. v. Seneca Ins. Co., 833 N.E.2d 1196, 1197 (N.Y. 2005).

The language of the Policy and the law are both clear. Thus, the Policy terms must be given their plain meaning, Sanabria v. Am. Home Assurance Co., 508 N.Y.S.2d 416, 416 (1986), and I must determine based on an objective standard whether the circumstances surrounding Balaguer's fall would have caused a reasonable person to believe that she may file suit, and, if so, whether seven months after the incident is "within a reasonable time."

I conclude as a matter of fact and law that 1854 Monroe's notice obligation under the Policy was triggered at the latest

10

when Echavarria learned of Balaguer's fall and the facts surrounding it in January 2007. Consequently, the notice 1854 Monroe provided United National of the incident in July 2007, concurrent with Balaguer's filing in state court, was untimely. There is no question that a reasonable person in Echavarria's or Acevedo's position would have realized that a claim against 1854 Monroe may result from Balaguer's incident given that: (1) the repairmen in her apartment were hired by 1854 Monroe's Board of Directors; (2) her fall was at least arguably related to the repairs they were making in her kitchen; (3) her fall caused injuries severe enough to require on-site emergency medical care and transport in an ambulance to the hospital; and (4) the resulting injury, a broken femur, caused her an extended hospital stay, and upon her release, required her to walk with the use of a cane. These facts, known to Acevedo days after they occurred and to Echavarria days after Balaguer returned to 1854 Monroe from the hospital, would have put a reasonable person on notice that they may result in the filing of a claim against the Insured.

On similar facts, New York courts have consistently concluded that reasonable people would have anticipated a claim. For example, in Tower Ins. Co. of New York, 855 N.Y.S.2d at 77, a woman slipped and fell on the insured's premises. She was removed from the premises on a stretcher and taken by ambulance

11

to the hospital.   Id.   Employees of the insured were present when the accident occurred, and the manager of the insured, while not present when the accident occurred, was informed of the accident shortly after it occurred by other employees of the insured.   Id.   The insured's manager insisted that he believed in good faith that no claim against the insured would result from the fall as the reason for failing to notify the insurer until it received a copy of the summons and complaint almost nine months after the accident occurred.   Id. at 77-78.   The court in that case held "as a matter of law that the insured failed to give [the insurer] notice of the accident within a reasonable period of time." Id. at 78.   The court rejected the insured's good faith belief defense as objectively unreasonable because "the insured's employees were aware of the accident, it involved a patron who slipped and fell on the insured's premises and the patron had to be removed by stretcher and transported by ambulance." Id.   Accord Zadrima v. PSM Ins. Cos., 616 N.Y.S.2d 817, 818 (N.Y. App. Div. 1994) (holding that no prudent person could reasonably believe himself immune from a potential claim where insureds were aware that the claimant was transported by ambulance to the hospital after his fall).

Consequently, United National's disclaimer for failure to provide timely notice is valid and effective.   United National

12

is entitled to judgment unless 1854 Monroe's defense that United National failed to disclaim in a timely manner has merit.

### C.   Timeliness of United National's Disclaimer

Under New York law, an insurer "shall give written notice as soon as is reasonably possible of . . . disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant."  N.Y. Ins. Law § 3420(d).  This is true even when the insured fails to provide timely notice in the first place.  Nationwide Mut. Ins. Co. v. Steiner, 605 N.Y.S.2d 391, 392 (N.Y. App. Div. 1993).  The reasonable time in which an insurer has to notify an insured of its intent to disclaim is uniformly measured from the time "the insurer has sufficient knowledge of facts entitling it to disclaim, or knows that it will disclaim coverage."  First Fin. Ins. Co. v. Jetco Contracting Corp., 801 N.E.2d 769, 837 (N.Y. 2003); Webster, 368 F.3d at 215-16.

In this case, United National did not have sufficient facts to disclaim in good faith or know that it would disclaim until August 20, 2007.  That is when Echavarria confirmed to Doniger, through Cruz, that she knew about Balaguer's fall shortly after Balaguer returned from the hospital in January 2007.  Defendants argue that United National had sufficient facts to disclaim coverage upon receipt of the summons and complaint in Balaguer's state court action on July 20, 2007, because the notice stated

13

on its face that the accident occurred on December 20, 2006, and notice was not provided until seven months later.   In support of their argument, Defendants cite cases holding that insurers' delays in issuing their disclaimers of thirty days or more were not reasonable when the reason for the disclaimer, untimely notice, was obvious from the face of the notice of claim and accompanying complaint.   E.g. West 16th St. Tenants Corp. v. Pub. Serv. Mut. Ins. Co., 736 N.Y.S.2d 34, 35 (N.Y. App. Div. 2002); Nationwide Mut. Ins. Co., 605 N.Y.S.2d at 392.

Here, however, the facts giving rise to the reason for United National's disclaimer were not obvious from the face of the notice of claim or from the accompanying summons and complaint.   It is true that Balaguer's accident occurred on December 20, 2006, and 1854 Monroe did not provide United National with notice until almost seven months later.   But, if no one representing 1854 Monroe knew of Balaguer's fall until it was served with the summons and complaint in her state court case, its duty to notify United National would not have arisen until that time.   Consequently, its notice, while late, would not have been untimely.

United National's duty to provide timely notice of disclaimer did not arise until it had sufficient facts to support a finding that 1854 Monroe knew about Balaguer's accident and the circumstances surrounding it close enough to

14

the event that its seven month delay in notifying United National was unreasonably untimely. 1854 Monroe points out that United National claims examiner Doniger testified during a deposition that he suspected "certainly the insured would have to have notice of" Balaguer's fall prior to being served with the summons and complaint in her state court action. (Exh. 27 at 69:7.) However, Doniger testified credibly before me that the seven months difference between the time of Balaguer's fall and the date United National received notice of her claim raised a "red flag" that there may be a "serious problem with notice," but that he did not have enough information about 1854 Monroe's knowledge of the event to disclaim coverage at that time. Doniger said that he would have to further investigate when 1854 Monroe knew about Balaguer's fall before United National could disclaim coverage in good faith.

Doniger further testified credibly that it was not until August 20, 2007, when United National claims representative Cruz spoke to Echavarria, that he felt confident enough that the Insured should have known that Balaguer may sue prior to being served with the summons and complaint in the underlying state court case to issue a disclaimer in good faith. Doniger issued said disclaimer on August 21, 2007, one day after it had sufficient facts to disclaim in good faith. Thus, United National's disclaimer was undoubtedly timely.

Even assuming, as 1854 Monroe argues, that United National should have disclaimed immediately upon being apprised of Balaguer's state court action,[4] United National's approximately thirty-two day delay in disclaiming coverage was excused as it was related to United National's reasonable investigation into 1854 Monroe's knowledge of Balaguer's fall, as explained above. See 105 St. Assocs., LLC v. Greenwich Ins. Co., 507 F. Supp.2d 377, 383-84 (S.D.N.Y. 2007) (holding an insurer's delay of thirty-four days was not unreasonable under circumstances similar to the case at bar).

### D.  Reasonableness of United National's Investigation

Finally, and related to their untimely disclaimer argument, Defendants argue that United National's investigation was "misdirected, inept and ineffectual," (Def's Mem. at 10), or put another way, unreasonable, and therefore not an excuse for any delay attributed to United National in issuing its disclaimer. I conclude that while United National's investigation, as described above, may not have been perfect, it was reasonably prompt and conducted in good faith.  Thus, to the extent necessary, any delay on United National's part was excused by

---

[4] On this point, I am especially bothered by Defendants' suggestion that insurers should take a "shoot first and ask questions later," approach to disclaiming coverage in personal injury cases. (Def's Mem. at 9.)  It seems that, if anything, insurance companies ought to conduct reasonable investigations into the circumstances surrounding a claim before disclaiming coverage out of hand.  I would suspect that by and large the plaintiffs' bar would agree.  See also Mount Vernon Fire Ins. Co. v. Harris, 193 F. Supp.2d 674, 678 (E.D.N.Y. 2002).

its good faith investigation into 1854 Monroe's knowledge of Balaguer's fall.

### III.  CONCLUSION

For the foregoing reasons, I find that under the applicable law United National is not obligated to defend or indemnify 1854 Monroe, and I enter judgment for United National and against Defendants on all claims.  Thus, it is hereby

ORDERED that judgment be entered declaring that United National is not obligated to defend or indemnify 1854 Monroe or Balaguer under United National's liability policy number L7180545 with respect to Balaguer's pending action against 1854 Monroe; and it is further

ORDERED that judgment is entered for United National, against 1854 Monroe on its counterclaim, and against Balaguer on her counterclaims; and it is further

ORDERED, that United National's request for the costs and disbursements of this action is GRANTED; and it is further

ORDERED, that the Clerk of the Court shall close this case. SO ORDERED.

Dated:     New York, N.Y.
           June _13_, 2010

KEVIN THOMAS DUFFY, U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DATE FILED: _1/16/10_

17